<pre>
1                UNITED STATES DISTRICT COURT
                WESTERN DISTRICT OF ARKANSAS
2                    FAYETTEVILLE DIVISION

3                              )
    UNITED STATES OF AMERICA,   )
4                              )
        Plaintiff,             )
5                              )
    VS.                        ) CASE NO. 5:15-CR-50080
6                              )
    SHILO WATTS,               )
7                              )
        Defendant.             )
8

9            TRANSCRIPT OF SENTENCING HEARING
          BEFORE THE HONORABLE TIMOTHY L. BROOKS
10              May 13, 2016; 1:42 p.m.
                FAYETTEVILLE, ARKANSAS
11

12  FOR THE GOVERNMENT:

13      Mr. Dustin S. Roberts
        United States Attorney's Office
14      414 Parker Avenue
        P.O. Box 1524
15      Fort Smith, Arkansas 72902
        479-783-5125 Phone
16      479-441-0578 Fax
        Dustin.Roberts@usdoj.gov
17
    FOR THE DEFENDANT:
18
        Mr. Joe Alfaro
19      Assistant Federal Public Defender
        3739 N. Steele Blvd., Suite 280
20      Fayetteville, AR 72703
        (479) 442-2306
21      Joe_alfaro@fd.org

22  Proceedings recorded in realtime via machine shorthand.
    _____
23
                Dana Hayden, CCR, RMR, CRR
24           Federal Official Court Reporter
                35 East Mountain Street
25           Fayetteville, Arkansas 72701
</pre>

1          THE COURT:  The next matter before the Court is

2    the case of the United States versus Shilo Watts.  Our

3    case number is 5:15-CR-50080.

4          Dustin Roberts appears on behalf of the United

5    States.  Joe Alfaro appears on behalf of Mr. Watts.

6    Donna Brown is here from U.S. probation.

7          Good afternoon, Mr. Watts.

8          THE DEFENDANT:  Good afternoon, sir.

9          THE COURT:  Do you understand the purpose of

10   our hearing today is for the Court to impose its -- you

11   can remain seated at this point, sir.

12         Do you understand that the purpose of our

13   hearing today is for the Court to impose its sentence

14   upon you as a consequence of your conviction in this

15   case?

16         THE DEFENDANT:  Yes, sir, I do.

17         THE COURT:  In the last 24 hours, have you

18   consumed any medications, drugs or other substances that

19   would have the effect of clouding your mind or causing

20   you not to understand what's going on here today?

21         THE DEFENDANT:  No, sir, I have not.

22         THE COURT:  Now, Mr. Alfaro has been your

23   attorney throughout these proceedings; is that correct?

24         THE DEFENDANT:  Yes, sir, correct.

25         THE COURT:  Are you fully satisfied with his

1    legal services and representation of you in this matter?

2            THE DEFENDANT:  Yes, sir, I am.

3            THE COURT:  All right.  Thank you, Mr. Watts.

4            THE DEFENDANT:  Thank you, sir.

5            THE COURT:  It would be appropriate that we

6    begin our hearing with a brief review of the procedural

7    history of your case that brings us to this point.  You

8    were indicted on what I believe originally was a

9    three-count -- I'm sorry, a five-count indictment that

10   alleged various counts, but essentially transporting a

11   minor with the intent to engage in sexual activities and

12   knowingly crossing a state line with the intent to

13   engage in sexual activities with a child under the age

14   of 12 years old.

15           You appeared back before the Court on January 6

16   of this year, at which time you entered a plea of guilty

17   to Count One of the indictment, which was one of the

18   counts that charged you with knowingly transporting a

19   minor with the intent to engage in criminal sexual

20   activities.

21           I accepted your plea hearing -- or I accepted

22   your guilty plea at that hearing, but I deferred

23   approval of your plea agreement until such time as I

24   could be informed by the contents of the presentence

25   investigative report.  So since you were here in

1   January, that's the process that we have been going

2   through.

3           The probation officer filed the initial

4   presentence report on April 6th of this year, and in

5   response to that, the government had one objection and

6   your attorney filed, I believe, 17 objections on your

7   behalf.

8           The probation officer was able to resolve some

9   of those objections but not all of those objections at

10  that time and, instead, a final presentence report was

11  filed on May 3rd of this year.

12          Now, at the same time that the final

13  presentence report was filed, a document that we call an

14  addendum was filed as well.  The addendum is the

15  document where the probation officer explains why some

16  objections have been resolved and why others have not

17  been resolved.

18          Our rules require that your attorney meet with

19  you and go over these presentence reports that I have

20  described, as well as the addendum, and I need to have

21  you confirm on the record whether or not that has

22  happened in your case.  Did Mr. Alfaro meet with you and

23  review these documents with you?

24          THE DEFENDANT:  Yes, sir, he did.

25          THE COURT:  Did he explain the contents of the

1    presentence report and the addendum to you?

2           THE DEFENDANT:  Yes, sir, he did.

3           THE COURT:  And did he answer any and all

4    questions that you may have had?

5           THE DEFENDANT:  Yes, sir, he did.

6           THE COURT:  Mr. Alfaro, can you confirm on the

7    record that you've received the initial and final

8    presentence reports, as well as the addendum and that

9    you have reviewed those with Mr. Watts and that you've

10   answered any and all questions that he may have had?

11          MR. ALFARO:  I have, your Honor.

12          THE COURT:  All right.  Well, in addition to

13   the final presentence report and the addendum, the Court

14   has received and reviewed the government's sentencing

15   memorandum, the defendant's sentencing memorandum, and

16   the Court has received a letter that's been written in

17   support of Mr. Watts by someone who I understand to be

18   an extremely close friend, and I appreciate the

19   opportunity to have been able to read that letter.

20          Mr. Roberts, other than the documents that I

21   have identified, are you aware of any other materials

22   that have been submitted for the Court's review?

23          MR. ROBERTS:  No, your Honor.

24          THE COURT:  Mr. Alfaro?

25          MR. ALFARO:  No, your Honor.

1          THE COURT:  All right.  Well, let's turn now to

2    these objections.  The government filed one objection, I

3    believe, and my understanding is that that objection was

4    resolved by the final presentence report.  Is that

5    correct?

6          MR. ROBERTS:  It is, your Honor.

7          THE COURT:  All right.  After the filing of the

8    final presentence report, numerous objections that the

9    defendant had raised remained outstanding.  Many of

10   those objections have to do with the multiple count

11   adjustments and the rules for multiple count adjustments

12   in cases where there are multiple victims in a child sex

13   trafficking case such as this.

14          Those objections are technical and I don't know

15   that we need to take an extremely long amount of time

16   for the Court to itemize what all those objections are

17   since I understand that in the last few days, the

18   government has conceded certain objections; and in light

19   of that, as I understand as of late yesterday that

20   Mr. Alfaro is withdrawing, I guess would be the proper

21   term, certain other objections that he had.  And I'll go

22   over a little bit of a summary of that in a moment, but

23   at this point, I want to make sure that my understanding

24   is correct that with the concession by the government of

25   groups 4, 5, 7 and 8, and with the defendant's

1  subsequent concession of groups 2, 3 and 6 that there

2  remain at this point no other objections, or at least no

3  other objections that would be guideline-determinative.

4       Is my understanding on that point correct,

5  Mr. Alfaro?

6       MR. ALFARO:  Your Honor, that would be correct.

7  The only objection that we would still argue that is not

8  guideline-determinative would be defense objection 16,

9  referring to the prior charge that was ultimately

10 dismissed in the PSR, Paragraph 140.

11      THE COURT:  Paragraph 140?

12      MR. ALFARO:  I believe that's correct, yes,

13 Judge.  Paragraph 140 on Page 19, that would be the only

14 objection that is not guideline-determinative that we

15 recognize but that we would still assert.

16      THE COURT:  Oh, okay.  I thought you were

17 saying that there remains only one objection that is

18 guideline-determinative, and you kind of threw me on

19 that.  Okay.

20      MR. ALFARO:  I apologize, your Honor.

21      THE COURT:  All right.  Well, we will take this

22 up in a second.  I just want to make a clean record that

23 the defense is still maintaining its

24 nonguideline-determinative objection.  I believe that

25 was 16, did you say?

1          MR. ALFARO:  Yes, your Honor.

2          THE COURT:  Other than Objection Number 16, all

3    of the other of the defendant's objections have either

4    been conceded by the government or withdrawn by

5    Mr. Watts; is that correct?

6          MR. ALFARO:  Judge, I wouldn't classify that --

7    I apologize for not clearing -- the other one we

8    wouldn't withdraw -- we wouldn't withdraw any other

9    guideline-determinative ones.

10         THE COURT:  Okay.

11         MR. ALFARO:  We would maintain those but

12   recognize that the judge does not have to rule on those

13   specific ones.

14         THE COURT:  All right.  So with the exception

15   of the nonguideline-determinative objections, all other

16   objections that do impact the guidelines have been

17   either conceded by the government or are being

18   withdrawn.  Is that correct?

19         MR. ALFARO:  That's correct, Judge.

20         THE COURT:  And of the

21   nonguideline-determinative objections, you would like to

22   see the Court rule on your Objection Number 16, but you

23   concede that the Court need not, and you're not seeking

24   a ruling on the other nonguideline-determinative issues.

25   Is that right?

1           MR. ALFARO:  Correct, your Honor.

2           THE COURT:  All right.  Mr. Roberts, do you

3   agree to the Court's recitation of the group concessions

4   that I articulated a few moments ago, as well as is your

5   understanding that the defendant has withdrawn its group

6   objections that I itemized?

7           MR. ROBERTS:  Your Honor, I believe the Court

8   has it right.  I do want to clarify.  Objections 1

9   through 6, which are factual objections, that's noted in

10  the addendum.  The defense is not claiming that those

11  statements were not made by the victim; they're just

12  saying that they're not true.

13          THE COURT:  Right.

14          MR. ROBERTS:  So with that clarification, yes,

15  the Court has it right, your Honor.

16          THE COURT:  All right.  Mr. Alfaro, I'll let

17  you be heard on your Objection Number 16 that goes to

18  Paragraph 140 of the PSR.

19          MR. ALFARO:  Thank your Honor.

20          Just briefly, this charge is potentially -- or

21  let me rephrase that -- has factual information that

22  we're not objecting to in that that information is

23  contained in some sort of report.  However, we are

24  contesting the factual -- I guess the truth of those

25  facts.

1          Given that this offense was dismissed, it

2    wasn't put through the test of the judicial process, we

3    would ask that it be removed because we believe it could

4    affect Mr. Watts' placement in the BOP as far as their

5    score of his risk or a danger as this is an assault

6    charge.

7          So for that reason, given that it was dismissed

8    and that he is contesting the facts in that paragraph as

9    noted in our sentencing memo, we would object to that

10   and ask that it be taken out, Judge.  That's all I have.

11          THE COURT:  Thank you, Mr. Alfaro.

12          Mr. Roberts?

13          MR. ROBERTS:  Your Honor, pursuant to Rule 32,

14   I don't believe the Court needs to make a ruling on that

15   in that it does not affect the guidelines; it does not

16   need to be considered for sentencing purposes.

17          I understand what they are saying as far as

18   designation within BOP.  I was planning on putting the

19   probation officer up to prove it up if necessary, but it

20   sounds like they're conceding that those reports say

21   what they are referring to.

22          I think it's properly considered under "Other

23   Arrests," your Honor.

24          THE COURT:  All right.  This is a

25   nonguideline-determinative issue, and all things in this

1    case considered, it is not going to have any impact on

2    the Court's sentencing decision, and for that reason the

3    Court is going to deny the -- or overrule, I should say,

4    the defendant's objection with the understanding that

5    the premise of the objection is not -- that the court

6    records do not show what Paragraph 140 purports them to

7    show but, rather, the defendant is merely denying that

8    he is liable for the conduct that is attributed to him

9    in Paragraph 140.

10          So the Court's going to overrule the objection,

11    but it will ask the probation officer to add a sentence

12    at the end of Paragraph 140 which would state that the

13    defendant denies that he committed the conduct stated in

14    this paragraph.

15          The Court's ruling with regard to the other

16    objections that are nonguideline-determinative will be

17    that the Court need not rule on those, and the Court

18    will not take those factual matters into consideration

19    as part of sentencing, either.

20          With that being said, Mr. Alfaro, has the Court

21    now made any record that you might seek it to make on

22    your objections?

23          MR. ALFARO:  I believe with the concessions, I

24    think that's everything, Judge.

25          THE COURT:  All right.  That being the case,

1    the Court is going to instruct that the sentence be

2    added, as I just mentioned, to Paragraph 140.  And then

3    it may require some overtime by the probation officer to

4    figure this out, but the net effect of the revisions

5    that need to be made -- well, it's going to start, I

6    think, in Paragraph 123, and the following groupings

7    should be removed:  4, 5, 7, and 8.

8           The groupings that remain would be 1, 2, 3, and

9    6.  That is going to have a corresponding mathematical

10   revision that needs to be made in several paragraphs

11   below that, I believe continuing all the way through the

12   total, I think almost every paragraph until we get to

13   the total offense level and including the total offense

14   level, but I'll let you figure out which those are and

15   then obviously we'll go over that again in a moment.

16          With those objections being resolved as the

17   Court has instructed, and with those revisions to be

18   made as I have instructed, the Court will otherwise

19   adopt and approve the final presentence report without

20   any other revisions or corrections.

21          And with that being said, the Court is now in a

22   position to give final approval to the plea agreement in

23   this case.  The Court does so based on a finding that

24   the offense of conviction in Count One adequately

25   reflects the seriousness of Mr. Watts' actual criminal

1   behavior and conduct.

2         And the bottom line, Mr. Watts, that means that

3   the sentence that the Court ultimately will impose in

4   this case will be consistent with the plea agreement and

5   the terms of the plea agreement that you and your

6   attorney entered into with the government.

7         So with that business out of the way, I'd now

8   like to turn more precisely to the sentencing, and we'll

9   begin this portion of the hearing with an explanation of

10  the factors that the Court has taken into consideration

11  in arriving at what would be an appropriate sentence in

12  this case.

13        And while the Court has taken many of these

14  factors, or really all of these factors into

15  consideration prior to arriving on the bench this

16  afternoon, the Court will continue to evaluate and weigh

17  these factors throughout the remainder of our hearing

18  until the Court ultimately imposes sentence at the end

19  of the hearing.

20        So Mr. Watts, the way that I explain the

21  factors that the Court takes into consideration is in

22  two parts.  The starting place is the first part, which

23  involves a calculation of the United States sentencing

24  guidelines and then that results in a range of

25  punishments within which the sentencing commission would

1  recommend that you be sentenced, and the Court must not

2  only calculate that range, but it must also consider

3  that as an advisory recommendation from the sentencing

4  commission.

5      But because the guideline range is merely that,

6  an advisory range or a recommended range, the Court must

7  go to Phase 2, or the second step of the process; and at

8  that point the Court must consider a whole host of

9  factors that are set forth at a place in our law book

10 known as Title 18 United States Code Section 3553(a).

11     And because that's kind of the chapter and

12 verse where it's found in our code book, these factors

13 are oftentimes referred to in a shorthand fashion as the

14 3553(a) factors.  So if you hear me use that term, it

15 simply means the place in our code book where they're

16 found.  And I'm going to go over what those factors are

17 in a moment, but our analysis should begin with a

18 calculation of the guidelines.

19     As we have alluded to a few moments ago in

20 dealing with the objections, the guideline calculation

21 appears in the final presentence report, and for that

22 reason, and because a lot of this is extremely

23 technical, the Court is going to adopt and incorporate

24 by reference the calculation that appears in the final

25 presentence report as revised a few moments ago in the

```
 1   Court's instructions, and the Court will also instruct
 2   that a revised final presentence report be prepared.
 3   The Court believes it is important in this instance that
 4   that be done and that it not just appear in the
 5   statement of reasons.  But I am going to summarize the
 6   calculation for you, Mr. Watts, because I want to make
 7   sure that you understand this.
 8          So you can think of it this way.  Every
 9   different federal crime has a corresponding section of
10   the guidelines that we use to make the guideline
11   calculation, and here your offense -- or for your
12   offense we use sentencing guideline Section 2G1.3, and
13   that calls for a base offense level of 28.
14          Let me back up a little bit.  In order to
15   determine the guideline range, if you think of it as a
16   grid and a grid has two axes, one axis is known as the
17   offense level, and the other axis is known as the
18   criminal history category.  So I've got to determine two
19   points, and once I know those two entry points, then I
20   simply follow where they intersect and that will give me
21   the guideline range of punishment.
22          So the first entry point that we must calculate
23   is known as the offense level, and your base offense
24   level, because we are using Section 2G1.3 as the
25   applicable guideline, the calculation starts at a 28.
```

1          And then we look at the manner in which the

2    crime was committed or the characteristics of the crime

3    that separate the commission of the crime from the more

4    generic or base offense level, if you will, and the

5    following special offense characteristics have been

6    applied here.

7          There is a two-level enhancement because of the

8    fact that the minors, or at least some of the minors

9    were in your care, custody or supervisory control.

10          There is another two-level enhancement that has

11    been applied in this case specifically because the

12    defendant was approximately 31 years old and the victim

13    was approximately 12 years old when the abuse began, and

14    the guideline provides that if a participant unduly

15    influenced a minor to engage in prohibited sexual

16    conduct, then that calls for this two-level enhancement

17    that I have stated.

18          And finally, there is an additional two-level

19    enhancement because the offenses were characterized by

20    sexual activities and contact with the minor.

21          So we started with a 28.  There's a total of

22    six levels of enhancements and that gets us up to a

23    Level 34.  That is with regard to Count One.

24          There are other counts that we look to and have

25    to perform the same basic calculation that I have just

laid out.  They all start with a base offense level of
28, and I believe that some of them -- several of them
have the same special offense characteristics that I
just mentioned; some don't.

The objections were made to whether some of the
groups or the victims should be considered for
calculation purposes or not.  The long and short of it
is four different groupings have been included in this
calculation.  The highest offense level that is achieved
by any of those groupings is a 34, such as Group 1,
Count One that I just explained to you.

The rules say that although we're going to
calculate as a separate group the crimes committed upon
each of these victims that remain at issue, we're going
to use the highest adjusted offense level and so in your
case the highest adjusted offense level is 34, which is
Count One, or it's equal to the Count One in Group 1,
all of that to say that your adjusted offense level in
this case is a 34.

To that there is another adjustment that is
made based on multiple counts and so you can think of it
this way:  Of the minor of the victims who have been
included for grouping purposes, the highest adjusted
offense level is a 34, but there are a total of four
groupings that remain after all of the objections have

1   been resolved; and under our rules -- and the

2   calculation can be complicated, but there's actually

3   going to be a one-level adjustment for each of those,

4   Groups 1, 2, 3 and 6.

5           So we add four levels to the 34.  That gets us

6   to a combined adjusted offense level of 38.  So now

7   there are some downward adjustments that you are

8   entitled to from that point.  Specifically the probation

9   office has recommended a two-level downward adjustment

10  for your acceptance of responsibility, and I think that

11  that is appropriate here and that will be awarded.

12          And consistent with the terms of your plea

13  agreement and upon motion of the government, the Court

14  can award one further level of reduction.

15          Mr. Roberts, what says the government?

16          MR. ROBERTS:  Government so moves for the

17  one-level reduction, your Honor.

18          THE COURT:  That motion will be granted and so

19  you will receive, Mr. Watts, a total of three levels of

20  reduction.  It literally takes a calculator to do this,

21  but that brings the new adjusted offense level to a 35.

22          And then we go to the next chapter of our

23  guidelines, and in this case you are going to receive a

24  five-level enhancement pursuant to Section 4B1.5(b), and

25  this has to do with both the instant offense of

1  conviction being a covered sex crime, other situations

2  not applying, and then also looking to the criminal

3  history of the defendant.  Again, the enhancement is

4  five levels.  The calculation is complicated, but

5  because of those matters, it's a five-level enhancement.

6  That makes your total offense level a 40.

7  Mr. Alfaro, because of the complicated nature

8  of this computation, I'm going to ask whether you concur

9  that the total offense level that we should be

10  calculating should be a 40.

11  MR. ALFARO:  We agree, your Honor.

12  THE COURT:  Mr. Roberts?

13  MR. ROBERTS:  I do, your Honor.

14  THE COURT:  All right.  So the second input is

15  the criminal history category, and in order to determine

16  that, we look at your prior criminal history, and

17  pursuant to the scheme that's laid out in the

18  guidelines, each prior criminal history that you have

19  may or may not score points.  But in your case, and for

20  the reasons explained in Paragraphs 134 through 139, you

21  score a total of nine criminal history points and that

22  places you in criminal history category IV.

23  There is another special guideline provision

24  that comes into effect that can be explained at Section

25  4B1.5(b), but it doesn't change your criminal history

1  category in this instance.  So your criminal history

2  category is a IV.  There are a total of six categories

3  with I being the lowest and VI being the highest and so

4  you're at the upper middle end there with a criminal

5  history category IV.

6          So we now know those two inputs to our

7  sentencing grid, and we simply follow to where those

8  lines intersect.  And at that point of intersection, I

9  can tell you that the sentencing guidelines would

10 recommend this Court sentence you as follows:  To a

11 period of incarceration of between 360 months and up to

12 life imprisonment; for a period of supervised release to

13 follow thereafter for a minimum of five years and up to

14 life; to a fine of between $25,000 and $250,000; and to

15 a special assessment in the sum of $100.

16          Mr. Alfaro, do you concur that that is the

17 correct calculation of the guidelines?

18          MR. ALFARO:  We do, your Honor.

19          THE COURT:  Mr. Carter (sic)?

20          MR. ROBERTS:  Same, your Honor, yes.

21          THE COURT:  All right.  We now move to Phase 2,

22 or the second step in the process of the Court's factors

23 to consider.  These are the so-called 3553(a) factors

24 that I alluded to a few moments ago, Mr. Watts.

25          Those factors as pertinent here would include

such things as the Court's review and consideration of

the nature and the circumstances of the offense and the

method and manner that it was committed.  It also

involves the Court's review of your personal history,

background and characteristics.  It also involves the

Court's consideration of other sentences that have been

imposed upon other defendants who have been convicted of

the same or similar crimes and who have the same or

similar criminal history, with the objective being that

the Court should avoid any unwarranted differences

across those sentences.

Ultimately there is another factor that I think

is always very important and that is this:  The Court is

to look at you as an individual, not as some statistic

out of a book, and to custom-tailor a sentence for you

which is sufficient, but not greater than necessary, to

achieve and fulfill the purposes for which we sentence

people who are convicted of federal crimes in the first

place.

So what are those purposes?  Congress says that

in fashioning this custom-made sentence, the Court

should do so in a manner such that the sentence reflects

the seriousness of the offense, so that it will promote

respect for the law, so that it will serve as a

deterrent to both you specifically and to the community

1    more broadly.  A sentence should be just.  A sentence

2    should serve to protect the public from any future

3    crimes that you might otherwise commit.

4            So the Court has taken into account, from all

5    of the information that is available to it, all of the

6    purposes of sentencing that I have just mentioned, as

7    well as the other 3553(a) factors that I itemized for

8    you, and I have taken those into consideration in the

9    context of the advice that I have received from the

10   sentencing commission and our guideline calculation.

11           So what we're going to do next is I'm going to

12   ask for the attorneys for both parties to offer any

13   sentencing recommendation or argument that they might

14   have.  I'm going to ask Mr. Roberts to go first and then

15   I'll ask Mr. Alfaro to go second and then I'm going to

16   give you an opportunity to make any statement that you

17   might like to make to the Court in mitigation of the

18   sentence that the Court might otherwise impose.

19           You will not be obligated to make a statement,

20   but I want you to know that you'll be given that

21   opportunity, and I'll certainly be glad to hear anything

22   that you have to say.

23           Mr. Roberts, you may proceed.

24           MR. ROBERTS:  Thank your Honor.

25           Your Honor, the government recommends that this

1  Court impose a life sentence on Mr. Watts. I don't do

2  so lightly, but I believe it is clear to the Court,

3  based on the facts before it, that Mr. Watts is the

4  single biggest, or perhaps most prolific child molester

5  ever presented to this Court in terms of number of

6  victims.

7           I could be up here arguing the seriousness of

8  the offense or the need to protect the public, but I

9  think the purpose of providing a just punishment in this

10 case is the driving factor.

11          The guidelines, of course, are advisory, and

12 while I'm usually the one arguing to the Court why they

13 should be followed, I think this is a good example why

14 they're advisory actually because if you look at the

15 calculation in this case, it takes individuals who have

16 been subjected to molestation, children who have been

17 subjected to molestation by this man over and over and

18 over again, and it reduces them to a point, one point in

19 a grouping. That is unacceptable. We're talking about

20 at least four minors here.

21          That is not something that the guidelines can

22 ever take into appropriate context. So the 3553(a)

23 factors of providing a just punishment are easily

24 supported by, in the government's perspective.

25          The facts are very easy. He's a

1   self-proclaimed pedophile.  He committed sexual

2   molestation, sexual acts on his nephew; based on his

3   criminal history, on the nephew's friend.  Moved outside

4   the country; has committed sexual molestation of

5   children in different countries.  Ended up in the

6   Marshall Islands, got into law enforcement there, a

7   position of public trust, and actually got fired because

8   he was molesting so many children.

9        There he came into contact with a comparatively

10  uneducated and underprivileged part of the world, and

11  when he was told that he was going to be removed, he

12  brought those children, those victims, the easy prey, to

13  America.  He didn't do that for them.  He did that to

14  fulfill his own sexually deviant desires.

15       The relevant conduct overall shows, depending

16  on if you go by his statement or by the victim's, either

17  14 or 18, approximately, victims.  Outstanding.

18       At what point does a just punishment call for a

19  life sentence?  I would argue to this Court -- and I

20  have argued to this Court -- that one victim's enough.

21  I've argued that two victims is enough.  I've argued

22  that more than two is way too many.  But what about

23  five, or ten, fifteen?  I've never argued something so

24  high.

25       And this is not a single instance of abuse on

1    these minors.  This is ongoing.  This is something

2    that's going to happen -- or did happen over and over

3    and over again in their life over a period in America

4    for four years, from 2008 to 2012, and that doesn't

5    count what happened in the Marshall Islands.

6             The defendant filed a sentencing memo in this

7    case, and in the sentencing memo, it spends a lot of

8    time talking about how he was sexually abused as a

9    child, two instances of sexual abuse, and that he never

10   got past it.  It turned him essentially into a

11   pedophile.  He turns around and does that to 14

12   children.

13            This man right here knows better than anybody

14   in this room what type -- what results sexual abuse has

15   or effects sexual abuse has on an individual.  He did it

16   to 14, by his own admission; up to 18 known to law

17   enforcement, if you take the victims.  He better than

18   anybody should know what he was doing, but he did that

19   for his own sexually deviant purposes.

20            In the sentencing memo, they reference and

21   attach a psychosexual development, which at first I was

22   going to object to because I wanted a shot at the

23   doctor, but when I read it, it was, again, outstanding.

24   Moderate to high risk of recidivism.

25            Their own doctor is telling you, if you release

1  this man, he's going to do it again.  2.7 times the

2  likelihood of recidivating based on a comparison to

3  other sex offenders.  2.7 times more likely.  That is

4  beyond anything I've read in a psychosexual development,

5  and I know they've been presented to court in other

6  cases, I believe by the federal defender's office, and I

7  would submit that that is probably the highest

8  likelihood of recidivism that this Court has ever seen.

9       The government filed sentencing memos in this

10 case, and they stand for themself, but looking at the

11 jail letters, I think that can't go unnoticed that when

12 he was before the Court, he was explaining his conduct

13 and explaining that he was a pedophile that never got

14 treatment; but then after several convictions, after a

15 time to reflect and consider what he did to those

16 minors, being incarcerated for several years, he goes

17 back to we're wrong, society is wrong for punishing him;

18 that those minors, they should be allowed to be sexually

19 molested by men like Mr. Watts.  That is unacceptable,

20 your Honor.

21      The defendant in this case pled guilty, which,

22 I listed a lot of cases in my sentencing memo to compare

23 this one to, and the only one I can get close to is the

24 Tony Alamo case.  That's the only one that I've ever

25 seen that's in the Western District, ever heard of in

1    the Western District that involved so many minors.

2             True, Tony Alamo tried the case, but the

3    defendant in this case, he confessed.  This is not a

4    case where you take this to trial.  This is a case where

5    as a defense attorney or as a defendant, you plead

6    guilty and hope that you get a guideline sentence of 360

7    to life instead of just life and that gives you a hope

8    to argue.  He got the benefit of that bargain.  He does

9    not deserve another benefit for that.

10            Your Honor, I think I could go on and on about

11   this case for a long time, but in summary there, at

12   least in my mind, there are two considerations.  One,

13   providing justice for the crimes he's already committed.

14   I think I've hit that.  But also, the Court has to be

15   aware of, or at least considerate of, the idea that

16   there's 14 or 18 kids, depending on how you count,

17   that's already been molested by this.

18            If that number ever becomes 15 or 19, that

19   means that this justice system, that this -- that we

20   have failed.  There should never be allowed -- or it

21   should never be allowed for this individual to victimize

22   one more kid.  Ever.  No chance.  And the only way to do

23   that is a life sentence.  Thank you, your Honor.

24            THE COURT:  Thank you, Mr. Roberts.

25            Mr. Alfaro, I'm going to let you make your

1    statement from counsel table today.  You may proceed.

2          THE COURT:  Thank your Honor.

3          Your Honor, we would respectfully request a

4    sentence of 45 years imprisonment to run concurrently

5    with already imposed state offenses that Mr. Watts is

6    serving, as that would be sufficient and not greater

7    than necessary under the 3553(a) factors.

8          Mr. Watts has committed terrible offenses, your

9    Honor.  There's no escaping that.  Mr. Watts has

10   certainly never escaped that.  I'm not sure if the

11   government was trying to state that Mr. Watts was

12   somehow inferring that society is wrong.

13         I think if you read those letters thoroughly,

14   which I'm sure this Court has already read, he's

15   accepted responsibility from day one.  Before he was

16   even going to be charged federally when he was arrested

17   back in, I believe it was 2012-2013, he gave a recorded

18   interview with law enforcement and admitted to

19   everything that he had ever done, Judge.  So from day

20   one, he has accepted responsibility, and he has admitted

21   his conduct, and he is remorseful for what he has done.

22         You know, when I first met with Mr. Watts about

23   this and about his confession, you know, he told me

24   something I think that's very resonating.  Who would

25   voluntarily choose to live like this, to have these

1   attractions, knowing that they were wrong.  Who would

2   want to be attracted to minors, knowing that they would

3   be persecuted and being treated like a leper.  "Who

4   would want to live like that, Mr. Alfaro?"  And that

5   struck a chord with me, Judge, because that's exactly

6   how I perceive this case.

7          As you read in the letters that he wrote, this

8   isn't a choice for him.  I mean, he makes the choice to

9   succumb to these urges, but these urges, these demons

10  are not a choice for him.  It is a documented mental

11  health disorder, pedophilia disorder, and he has been

12  diagnosed with that, Judge.

13         We can see that from his letters because in the

14  letter the government submitted to the Court, on the

15  first page, this is a letter that Mr. Watts wrote to one

16  of his sentencing judges in Texas:  "I wish, and have

17  wished to God for a billion times, to be normal.  I

18  fought and I fought so hard to suppress my sexual

19  preferences with an urgency between life and death.  I

20  was unsuccessful.  As a Bexar County deputy, I held my

21  .40-caliber Glock to my head many a night.  I could

22  never pull the trigger.  I wish I were brave enough and

23  strong enough to have, though.  In Bosnia, I purposely

24  walked into an area known to be polluted with land

25  mines."

1          I think that goes to show that he is

2    remorseful, and he feels the guilt not only of who he is

3    but what he has done.

4          As with all offenses, your Honor, there is a

5    sliding scale.  There is a large number of victims in

6    totality of his case.  There's four immediately,

7    relevant conduct, and the other ones he's admitted to,

8    your Honor.

9          But as other cases that we've cited in our

10   memo, he's not using force, he's not using weapons, he's

11   not using threats to do this conduct, and I think that's

12   an important delineating line.

13         If you sentence Mr. Watts to life, what about

14   the person who has 12, 14, 15 victims but who beats

15   them, tortures them, holds them at knifepoint, bounds

16   them in bondage in the basement, in addition to

17   producing child pornography and taking pictures and

18   doing all of those things?  How do you treat that

19   person?  Because in our opinion, that person is much

20   worse than what Mr. Watts does.

21         I think in the letters and in the evaluations

22   we attached by -- from Dr. Wallace, he referred to a

23   code of conduct, and I realize that that seems terrible,

24   Judge, but I think it's mitigating.  He said, "Look, I

25   realize that I don't have control of myself; so I have a

1    code of conduct:  I will ask these minors to engage in

2    this conduct.  I will never have them touch me, I will

3    never anally penetrate them and never take pictures or

4    produce pornography.  If they say no, I respect that

5    decision and don't touch them."

6            And we know that happened in the PSR.  It shows

7    that to one of the boys, Judge, that he requested and it

8    was denied and he respected that decision, and I think

9    that's something mitigating when you look at the way

10   this offense can be committed.

11           One thing that the government and myself also

12   pointed out was this case that we all had together, the

13   Rivera case.  And it's not a perfect comparison, Judge,

14   but I think it touches on the point that I just made.

15   One of the driving forces in that case was the depravity

16   of heart that that defendant committed his crimes in the

17   middle of the day, chasing down minors, grabbing them,

18   reaching down by force, and Mr. Watts simply did not do

19   anything like that.

20           So in that sense, his facts are mitigating, and

21   while there weren't as many hands-on offense in

22   Mr. Rivera's case, he was still held accountable for

23   something like 30 victims, Judge.

24           Regarding Mr. Watts' history and

25   characteristics, we will stand on the facts in our

1  sentencing memo, the PSR, and the report of Dr. Wallace.

2  He has been -- he had a terrible life, Judge, and the

3  PSR shows that.  Dr. Wallace at least attributed his

4  molestation by his family member and by this male at

5  school to the person that he has become today.  And the

6  purpose of this -- the point of me raising that is this,

7  Judge:  I think that the government's statement was

8  somehow referring that maybe he will be let out someday

9  and reoffend.  That is not what we're asking this Court

10 to do.

11       In regards to the need for just punishment,

12 deterrence, protecting the public, in addition to

13 allowing Mr. Watts to get rehabilitated mental health

14 treatment, the sentence that we are requesting is

15 severe.  It's not lenient.

16       To illustrate that, this case initially started

17 out in Texas, and the offer that the U.S. Attorney's

18 Office presented to his attorney was a 11(c)(1)(C) plea

19 to 30 years.  Of course, that was never accepted and

20 this case was sent here, but I think it's interesting to

21 know how one attorney's office could offer, even

22 consider that, and another is advocating for life,

23 Judge.

24       But the overall point that I'd like to make in

25 the requested sentence is he is not going to get out

anytime soon.  Even if this Court were to impose the
sentence requested, Mr. Watts will have to go back to
Texas.  He is not eligible for release -- or for parole
until November 5th, 2035, which is almost about 20
years.

Even if he gets released that time, which I
highly doubt, if he gets released, he's got to serve
another lengthy sentence for whatever time would be
remaining in the federal prison.  So we're not asking
for a slap on the wrist.  We're not asking for him to be
out in the next 10, 15, or even 20 years, Judge.  So
it's not like he's going to be out soon or even
relatively soon, with the sentence requested.

In Texas he is going to have access to their
sex offender treatment program.  I've spoken with the
administrators at that program.  He can't be admitted
until he's nearing parole eligibility.  It's an 18-month
program.  He's housed with other offenders.  He is not
ever released to the public until that program is
completed and he's eligible for parole, which of course
he will go back to the BOP.  But he's going to have
access to that.

In the BOP he's going to have additional access
to programs similar to that, should that be necessary.
And this Texas program, Judge, in my talking with other

1  attorneys, appears to be extremely reputable.

2      I think if you look at Mr. Watts as a person,

3  Judge, I think you see that on the one hand, we have a

4  person that committed terrible acts.  On the other hand,

5  you have a person who genuinely loves these minors, and

6  I just, I disagree with the government's statement that

7  the reason he brought these boys over was just so he

8  could have his own pool of offenders.  I don't think

9  that was the reason, Judge.  That may have been part of

10  the reason, but I think ultimately when you're looking

11  at Mr. Watts as a person, I think you have to see that

12  side, that he loves these boys.  He wanted to take care

13  of them and support them any way he could, and it wasn't

14  all about these sexual acts, Judge, and that's what

15  Mr. Watts is hoping that you'll see.

16      For those reasons and the reasons in our

17  sentencing memo, your Honor, what Mr. Watts is

18  essentially asking for, he's asking for hope.  He hopes

19  that he can be given a chance to address his mental

20  disorders and battle these urges.  He hopes that maybe

21  one day long from now, he can be released back into the

22  world to live out whatever few years he has as an old

23  man, to be a productive member of society and not

24  reoffend.  He hopes and respectfully requests that he be

25  given that opportunity, Judge, as opposed to a sentence

1    to death in prison.  Thank you.

2         THE COURT:  All right.  One area of inquiry,

3    Mr. Alfaro.

4         MR. ALFARO:  Yes, your Honor.

5         THE COURT:  You said he has how many years left

6    in the Texas system?

7         MR. ALFARO:  I have a sheet here, Judge.  If

8    you would like me to approach, I can give you a copy.

9    His projected release date is May 6, 2058.  His parole

10   eligibility date, which would be the earliest he could

11   be released, would be November 5th, 2035.  Before he

12   would be released, I am told by the sex offender

13   treatment program he would have to go through that

14   18-month program.

15        THE COURT:  All right.  So my question is this.

16   It sounds like before he would be eligible for parole --

17   almost 20 years left to go -- this Court has to make a

18   decision about whether to sentence him to a specific

19   term of months or to a life sentence.

20        Do you have any understanding or knowledge as

21   to whether what Texas does with him would be dependent

22   on what this Court does?  In other words, if this Court

23   were to give him a life sentence as opposed to a term of

24   months, might Texas say, well, we're going to cut him

25   loose and let him serve life in the Bureau of Prisons?

1        MR. ALFARO:  I do not have any idea of how that

2   would work.  Given that he's already serving that

3   sentence, I'm not sure if they would actually do that,

4   Judge, but I have no answer one way or the other.

5        THE COURT:  All right.  Do you have any

6   knowledge, Mr. Roberts?

7        MR. ROBERTS:  Based on Texas law, no, your

8   Honor.  I can tell you that in Arkansas that is not the

9   customary practice.  My experience is that he serves the

10  time in Arkansas prison.  Then when he's paroled or he's

11  released, he rolls into federal custody.

12       THE COURT:  All right.

13       All right.  Mr. Watts, would you like to make a

14  statement?

15       THE DEFENDANT:  Yes, sir, I would.

16       THE COURT:  All right.

17       THE DEFENDANT:  Excuse me.

18       Your Honor, I stand before you today a man who

19  has fully cooperated with authorities, a man who

20  voluntarily surrendered himself to a foreign government

21  when I could have very easily vanished into a number of

22  different countries with a new identity.

23       I honestly believe not fleeing and taking

24  responsibility for my actions by cooperation would count

25  for something, your Honor.  Truth be told, not

1  disappearing off the conventional grid was a difficult

2  decision, a decision I pondered daily, but it was a

3  decision I chose for my mother, for my brother and for,

4  most importantly, my victims, of whom, as this was going

5  on, they called me, contacted me via e-mail and asked

6  what should they do.  I specifically told them to

7  cooperate with authorities.

8          I'm pleading with you, sir, to please allow

9  cooperation to count for something other than the

10  harshest punishment possible.  My continued cooperation,

11  my wanting to take responsibility for my action out of

12  guilt and remorse has been met only with contempt, utter

13  hatred and recrimination.  Where is the incentive for

14  cooperation?  To date I have experienced none, your

15  Honor.

16          I can imagine you have well too many cases of

17  this nature cross your desk, and I can also imagine your

18  most exasperating question is why.  For the past 1,103

19  days, I have asked myself that same question, why.  I do

20  not know if my affliction is the symptom of my early

21  childhood introduction to sex, but it's an affliction I

22  would not wish upon my worst enemy.  The tragic grain of

23  truth to why is I just don't know, your Honor.  If I had

24  the answer, I would certainly say so to prevent

25  victimization.

1          What I can say, however, is that I sought out

2   help where absolutely no help exists.  Not even my

3   mother, my cousin, not my best friend heard me when I

4   confessed -- excuse me -- when I confessed this

5   affliction to them in my early 20s.

6          In a desperate search for some kind of support

7   and early intervention, I found none.  I know this means

8   nothing now, but would things be different if this

9   subject wasn't so taboo?  There are support groups for

10  everything under the sun meant to curb negative and

11  damaging behaviors, but there's absolutely nothing out

12  there for preoffenders to go to.  It doesn't exist.

13         I don't understand why it seems that no one

14  cares about pre- -- why no one understands about a

15  preoffending support network where people like myself

16  who want treatment can go for help.  All anyone cares

17  about, it seems, is incarcerating sex offenders as long

18  as possible after the fact.

19         What sense does this make, your Honor?  If it's

20  even remotely possible to prevent victimization, with

21  the advent of a preoffending support network, why does

22  no one seem willing to invest the time and energy to

23  establish such a thing.

24         Your Honor, I submitted a nine-page

25  comprehensive preoffending support group proposal that I

1  honestly believe would help reduce victimization and
2  reduce the amount of times you and other judges would
3  have to hear cases such as this.
4       Your Honor, this preoffending support group
5  proposal has been ignored and now is lost.  Not a single
6  copy can be located.  Maybe the important answer to why,
7  your Honor, can be found through early interdiction,
8  prevention and mitigation, for this will give
9  preoffenders like myself, when I was looking for
10 something as this out there wanting a -- it would offer
11 us a help -- excuse me -- it would offer us a safe
12 option to contribute to research and development, for is
13 it not through research and development that answers
14 come.
15      Your Honor, if you are interested, I pledge
16 before you today to personally keep you informed and
17 updated on my attempts to establish through professional
18 channels a preoffending rehabilitative support network.
19 I will also, if you are interested, keep you informed of
20 my attempts at rehabilitation.
21      I am willing to volunteer my body, my mind to
22 any test, experiment and/or treatment to prove my strong
23 desire to rehabilitate and earn a voice of support to
24 fellow citizens suffering from this affliction, citizens
25 who currently have no options for preoffending help.

1   Your Honor, will you please consider my

2 complete and full cooperation with the government in

3 your sentencing decision.  May I respectfully request

4 you strongly consider the sentence my attorney has

5 proposed.  I won't be final -- this sentence will give

6 me a possible release at the age of 80 years old.

7   May I also respectfully request that you

8 recommend my confinement to BOP Littleton, Colorado, a

9 facility that specializes in sex offender treatment.

10 And, sir, I know actions speak louder than words.  I'm

11 hoping that you can see my remorse and my regret through

12 my voluntary surrender to a foreign government overseas.

13   I thank you for your time and your

14 consideration, your Honor.  I would love the opportunity

15 to answer any questions you may have that will assist

16 you in your decision.

17   THE COURT:  Well, thank you very much,

18 Mr. Watts.  I do not believe that I have any questions

19 for you.  The PSR in this case is quite extensive, and

20 much of what you say is true with regard to the fact

21 that you've been quite forthcoming, and all of that

22 information has been made available to the Court, either

23 in the PSR or in the other letters that have been made

24 reference to or in Dr. Wallace's report.  So I think

25 between all of that, I have a really good understanding,

1  but I do appreciate your very well-thought-out

2  allocution to this Court.

3      The Court is going to stand in recess for about

4  15 minutes.  Everyone should be back in their place by

5  about 3:00.

6      (Recess from 2:48 p.m. to 3:06 p.m.)

7      THE COURT:  All right.  Mr. Watts and

8  Mr. Alfaro, if you'd remaining standing, everyone else

9  can be seated.

10     This is a difficult sentencing because of the

11 absolute seriousness of the nature of the offense and

12 the gravity of the situation in terms of the potential

13 sentencing range in this case.  I think that this, if I

14 can recall correctly, is probably the first time that

15 the defense attorney has ever asked for, as a

16 recommendation, a sentence as high as 45 years, and I

17 think that that speaks volumes about the seriousness of

18 this case.

19     So we know that the guideline calculation here

20 is 360 months to life, which, just by virtue of that

21 large range, means that the 3553(a) factors take on such

22 great importance here as to really control the

23 sentencing decision.

24     In applying the 3553(a) factors to the facts of

25 this case -- or really I should probably say that as we

1   look at the facts of the case and apply the 3553(a)

2   factors to them, the factors apply in almost an

3   aggravating fashion across the board, but I believe that

4   there are some mitigating factors, and I want to start

5   with those.

6          Mr. Watts has been before other courts before

7   and, yet, there have been additional offenses.  So I

8   don't know whether his statements and demeanor to the

9   Court today are genuine or not.  In the past it hasn't

10  seemed to have had a whole lot of impact, at least in

11  terms of deterrence.

12         But in any event, in a mitigating sense,

13  Mr. Watts is a very interesting defendant in the sense

14  that I don't know that this Court has yet encountered

15  someone who is as open and up front and as forthcoming

16  of his current crimes for which he is being sentenced,

17  as well as past offenses, and as well as his personal

18  affliction.  So that's something that you don't see very

19  often.

20         The Court also would find as mitigating -- I'm

21  not sure how far this goes, but he certainly didn't have

22  the best of upbringings.  There's at least a couple of

23  encounters in his very early, formative years that may

24  or may not account for or explain who he developed into

25  as he grew older.

1          The Court finds that in certain respects, the

2    report of Dr. Wallace is mitigating in the sense that

3    Dr. Wallace has diagnosed Mr. Watts with psychological

4    disorder.  He has been diagnosed with a known disorder

5    under the DSM known as pedophiliac disorder, and

6    Dr. Wallace is a person who has appeared and given

7    testimony to this Court.  He is trained and experienced

8    in this field, and the Court has been well informed by

9    his evaluation and his report, and Dr. Wallace's

10   finding, the Court -- or his diagnosis the Court very

11   much believes.  And so to the extent that there's a

12   psychological explanation behind some of the conduct,

13   the Court can at least recognize that it is a

14   psychological disorder as opposed to some more

15   evil-hearted or sociopathic causation.

16          The Court has received a letter from Mr. Watts'

17   friend, from I understand the Middle East, and the

18   friend states that he knows and understands the charges

19   that Mr. Watts faced and has been convicted of and

20   nonetheless, he remains supportive of his friend.  And

21   he makes a few points and tells a few stories about how

22   there is more to Mr. Watts than what he is charged with

23   and what he has been convicted of.  And the Court has no

24   reason not to believe that, and the Court finds as

25   mitigating that it must recognize that Mr. Watts is not

1    completely defined by his conviction in this case.

2         The Court also finds as mitigating the fact

3    that in a very unique way, at least unique in the sense

4    that it is more profound than a lot of cases, Mr. Watts

5    has accepted responsibility.  He's tried to be as open

6    and forthcoming about his predilections and the causes

7    for them.  He's volunteered his body and his brain for

8    study, and he's fully acknowledged his wrongdoing and so

9    on a scale of accepting responsibility, the Court finds

10   that that is extremely mitigating.  And to Mr. Watts'

11   point, his cooperation extended to not resisting being

12   brought -- coming back voluntarily to the United States

13   to face up to these crimes.

14         So after having read all of the presentence

15   report, having read the sentencing memorandums and the

16   attachments to the sentencing memorandums, the letters,

17   Dr. Wallace's report, I initially thought that I was

18   going to have a very difficult time coming up with many

19   mitigating facts, but as I thought through it more, I

20   think that there are several things that the Court can

21   take into account as mitigating as it looks to the

22   3553(a) factors.  And for the most part, these go to

23   mitigate the nature and circumstances of certain edges

24   of the offense; in other respects they go to the

25   defendant's personal background, history and

1    characteristics.

2            But obviously there are aggravating

3    circumstances here, and in looking at the 3553(a)

4    factors and the facts of the case as set forth in the

5    PSR and other materials that I just mentioned that the

6    Court has reviewed, the 3553(a) factors can really be

7    viewed in an aggravating light to almost every single

8    factor and every single purpose of sentencing.

9            The offense of conviction, combined with the

10    relevant conduct, which adds up to something in the

11    range of I think 14 documented victims -- and the PSR

12    would indicate that there are likely others but they

13    couldn't take a statement from them -- I think in terms

14    of hands-on sexual activity is probably, if not

15    absolutely the most number of separate hands-on victims

16    of any defendant that this Court has ever sentenced.

17            Mr. Alfaro makes the point that, "Well, Judge,

18    it could be worse.  He could have, you know, held them

19    down, tied them up, put a gun to their head, put a knife

20    to their throat, and he didn't do any of that.  He

21    always asked permission."  Okay.  But the fact remains

22    that despite the concept that it could have been worse,

23    it is extraordinarily bad just as face value.  And not

24    only is it bad, Mr. Watts, but it quite possibly is the

25    worst overall conduct that this Court has faced

1  involving sex trafficking or sexual offenses against

2  minors.

3       So the nature and circumstances of the offense,

4  although we can soften some of the edges based on the

5  mitigating things that I said, is still extraordinarily

6  serious and viewed in a very aggravating sense.

7       As to your personal history, background and

8  characteristics, I think many of the factors that I

9  mentioned earlier that weigh in a mitigating way, those

10  all come in under the factor of your personal history

11  and background.  But, of course, criminal history comes

12  in there as well, and you do have a rather significant

13  criminal history.

14       And, you know, a lot of times this Court sees

15  first-time offenders, and the Court kind of almost

16  always, unless there's some good reason not to, is at

17  least inclined to cut a first-time offender a break and

18  then the more times that they come back, there's a

19  direct correlation between the Court's willingness to

20  cut them any slack.  And given your criminal history,

21  given that you find yourself as a criminal history

22  category IV, there just isn't any room to give you any

23  consideration for mitigating or lack of a criminal

24  history.  Your criminal history is very well established

25  and is viewed in a very aggravating sense.

1          With regard to the need to avoid sentencing

2     disparity, the Court has gone back and reviewed

3     sentences in cases before this Court involving sex

4     offenses against children, sex trafficking, and I

5     realized that I had not ever sentenced anyone to life in

6     terms of that term "life" before.  The Court has imposed

7     sentences in terms of years, which, combined with their

8     age effectively meant that they would be in prison for

9     the rest of their life, but the Court has never

10    actually, that I can recall for a sex offense, ever

11    sentenced someone to life.

12         But of the most severe of those that the Court

13    has sentenced to significant, very significant terms of

14    years that would be a proxy for their life, your conduct

15    and the nature and circumstances of this case calls for

16    greater punishment than anyone else with regard to

17    similar types of crimes, or in the same categorical

18    types of crimes that this Court has sentenced, and the

19    Court cannot lose sight of that.

20         Now, I would also say that your own attorney is

21    advocating for a sentence of 45 years, and that's

22    probably towards the very top but not the most that the

23    Court has ever sentenced anyone to as it is.

24         And when we get to the other factor of what is

25    just, what is a sentence that would be sufficient, but

1  not greater than necessary to fulfill all of the

2  purposes of sentencing, and when we look at those

3  individual purposes, we start with the fact that a

4  sentence should be individualized, and it should

5  reflect, among other things, the seriousness of the

6  offense.  I've already spoken at length about how I view

7  the seriousness of the offense and so, therefore, taking

8  that purpose into consideration, the sentence should be

9  towards the maximum possibility.

10         When the Court looks at the need to provide

11  just punishment, I think I interpret just punishment to

12  mean a punishment that fits the crime.  Sometimes the

13  guidelines are out of whack with what is just, what is

14  appropriate for the crime and so, you know, the

15  guideline range in certain situations can ring up a

16  really high number, and when you step back and look at

17  it, that's just not just; that is not in context; that

18  is not appropriate for the offense.

19         In this case certainly the guideline range of

20  360 months to life would be a just punishment, and for

21  the same reasons that I have explained a few moments

22  ago, a just punishment in this case would be at the very

23  upper end of that range, including a life sentence.

24  That is just what would be appropriate, given the extent

25  of the criminal activities that have occurred here.

1    There's a factor of promoting respect for the

2    law.  You know, I'm not sure what to make of that

3    purpose here.  Mr. Watts, in his attitude and demeanor

4    and acceptance of responsibility, has portrayed a person

5    who in some respects has respect for the law.  His

6    argument is that he understands the law is there.  To a

7    certain extent he disagrees with it.  He thinks that

8    boys, young boys should be able to make these decisions

9    on their own; but for the most part, he recognizes that

10   the law is there and his defense is more or less that

11   "it's an addiction and I just can't help myself; I just

12   try to be polite and appropriate when I engage in this

13   activity."

14       I don't know that that, at the end of the day,

15   represents respect for the law, but that is not one of

16   the Court's greater concerns.  I think deterrence is a

17   concern of the Court.  Obviously this repetition of

18   activity the Court is greatly concerned about and, thus,

19   the punishment has to adequately reflect deterrence.

20   But at the same time, the Court has to temper that

21   conclusion with the fact that Mr. Watts is a pedophile,

22   and I don't know that any sentence that the Court

23   imposes would ever deter him from his predilections.

24       I think ultimately knowing that we are at the

25   upper end of the guideline range and that the guideline

1  range is 360 months to life, and having said all that

2  I've said about each of the other factors that it comes

3  down to, when the Court comes down to the decision of

4  whether it's going to impose a very significant term of

5  months or whether it is going to impose life, it comes

6  down to what is just that I've already mentioned, and

7  finally I think it comes down to the need for the

8  sentence that this Court imposes to protect the public

9  from Mr. Watts.

10        And I understand that Mr. Watts has this view

11 that he's polite about this, that he always asks, but

12 minors can't consent, and I think you fail to recognize

13 that.  And if it weren't for your nephew, the Court

14 wonders how many other young boys that you would have

15 victimized.

16        The Court is extraordinarily well persuaded

17 that if you are given an opportunity, you will continue

18 to offend, and the Court is compelled in its final

19 conclusion that that tips the final grains on the sand

20 and suggests that the Court should impose the ultimate

21 punishment option that is available to it in this case,

22 which is a life sentence.

23        Therefore, for those reasons, and after having

24 considered the 3553(a) factors, as the Court has

25 explained, Mr. Watts, it is the judgment of this Court

1    that you are to be committed to the custody of the

2    United States Bureau of Prisons to be imprisoned for a

3    term of life on Count One of the indictment.

4            The Court will make some recommendations to the

5    Bureau of Prisons, oddly recognizing that the first

6    opportunity that the designations division of the Bureau

7    of Prisons will have to look at these recommendations,

8    both the designator and this Court will likely be

9    retired by then, which is kind of odd.  But in any

10   event, to the extent that someone at the Bureau of

11   Prisons has been notified that you are transferring over

12   to them from the Texas state department of prisons, the

13   Court hopes that they would follow these

14   recommendations.

15           First of all, to the extent consistent with

16   Mr. Watts' classification and the Bureau of Prisons

17   evaluation, the Court would recommend that Mr. Watts

18   serve his time at its facility in Littleton, Colorado.

19   The Court does so on Mr. Watts' request and based on

20   Mr. Watts' representation that there is a sexual

21   treatment unit at Littleton, Colorado.  I don't know

22   personally whether that's true or not or whether it will

23   be true or not in 20 years.  So if that happens to not

24   be the case, the Court's alternative recommendation

25   would surely include that he be placed at a facility

1  where he would be offered treatment for his diagnosed

2  psychological condition.

3        Along those lines, the Court, in its

4  recommendation to the Bureau of Prisons -- and I'll try

5  to think about how to better articulate this when we

6  write the commitment paperwork, but conceptually the

7  recommendation to the Bureau of Prisons is going to be

8  that they flag your paperwork, and when you are

9  designated to the Bureau of Prisons that they send your

10  files to the most senior person within the Bureau of

11  Prisons that is responsible for the empirical

12  investigation of sex offenders.  And what treatment

13  modalities work, what treatment modalities do not that

14  in effect, that in this Court's estimation, given your

15  expressed willingness to participate in such programs or

16  to voluntarily submit yourself to such evaluations that

17  you are uniquely positioned to be of value for empirical

18  study and investigative study and research and certainly

19  would benefit from any therapy modalities that might be

20  available as well.

21        So as I said, I will try to articulate that

22  concept more precisely, but to the extent that they have

23  a need for or are doing those types of studies, I'll ask

24  that you be flagged for participation in any such

25  long-term studies.

1          Given that the Court has imposed a life

2     sentence, it will not impose a term of supervised

3     release.

4          The Court has assessed the defendant's ability

5     to pay a guideline range fine and is persuaded that the

6     defendant does not have the present ability to pay a

7     guideline range fine.  However, the Court is also well

8     persuaded that Mr. Watts is fully capable of being

9     employed while he is incarcerated in the Bureau of

10    Prisons, and from those earnings he will be able to make

11    payments towards a fine, and for those reasons the Court

12    is going to impose a fine in this case in the sum of

13    $20,000.

14         The Court is also going to impose a mandatory

15    special assessment in the sum of $100.

16         Mr. Watts, technically the fine and the special

17    assessment, which I refer to collectively as financial

18    penalties, are due and payable immediately, but to the

19    extent that you cannot pay all of that amount

20    immediately, you will be required to make payments on

21    the following schedule.

22         Any unpaid financial penalty shall be paid by

23    the defendant during his term of imprisonment at a rate

24    of up to 50 percent of the defendant's available funds,

25    in accordance with the Inmate Financial Responsibility

1    Program.

2           That is the Court's intended sentence in this

3    case.  Mr. Alfaro, do you know of any reason why this

4    sentence should not be imposed as stated?

5           MR. ALFARO:  No, your Honor.

6           THE COURT:  Mr. Roberts?

7           MR. ROBERTS:  No, your Honor.

8           THE COURT:  Very well.  The sentence will be

9    imposed as stated.

10          Mr. Roberts, I believe there are some remaining

11   counts of the indictment.  What should the Court make of

12   those?

13          MR. ROBERTS:  The government would move to

14   dismiss the remaining counts, your Honor.

15          THE COURT:  That motion will be granted.

16          Mr. Watts, the last thing we need to cover

17   today is that I need to explain to you your appeal

18   rights.  You technically have the right to appeal your

19   underlying conviction in this case, but the

20   circumstances where you could do that are fairly narrow.

21   It would have to be a situation where you contend that

22   your guilty plea was involuntary or somehow a byproduct

23   of a fundamental defect in the proceedings which have

24   not otherwise been waived by your guilty plea.

25          Of course, you do have the right to appeal the

1    sentence that the Court just imposed if you contend that

2    it is procedurally or legally improper.

3         The important thing that you should be aware of

4    is that regardless of why you appeal, or on what basis

5    you may seek to appeal, there's a time limit for filing

6    your notice of appeal.  The time limit is 14 days.  The

7    time begins to run on the date that the Court's paper

8    judgment of conviction is uploaded to the docket in your

9    case, which will likely be one day at the first part of

10   next week.

11        There is a filing fee that goes along with the

12   filing of a notice of appeal, but if you cannot afford

13   to pay the filing fee, then upon application, the Court

14   will waive that fee.

15        The clerk of the court has forms and can assist

16   you in filing those forms as necessary to perfect your

17   notice of appeal and will do so upon, as I said,

18   request.

19        You also have the right to be represented by

20   counsel on appeal, and if you cannot afford to retain an

21   attorney for that purpose, the Court will appoint an

22   attorney to represent you.

23        I know that Mr. Alfaro will speak with you and

24   counsel you further with regard to appeal issues, but do

25   you at least understand your basic appeal rights as I've

1    just explained them?

2            THE DEFENDANT:  Yes, sir.

3            THE COURT:  At the conclusion of our hearing,

4    the defendant will be remanded to the custody of the

5    United States Marshals Service pending transfer to the

6    Bureau of Prisons or to the institution that he may be

7    writted from.

8            Mr. Watts, as I began the explanation of the

9    Court's sentence today, I explained that it was very

10   difficult and obviously more difficult for you than for

11   me, but I want you to know that I have given

12   considerable thought, and based on all of the

13   information available to me, and based upon all the

14   factors that I am required to take into consideration

15   that, while difficult, it is a sentence that the Court

16   felt was just and appropriate.

17           Is there anything further today, Mr. Roberts?

18           MR. ROBERTS:  No, your Honor.  Thank you.

19           THE COURT:  Anything further, Mr. Alfaro?

20           MR. ALFARO:  No, your Honor.

21           THE COURT:  We're adjourned.

22           (Proceedings adjourned at 3:38 p.m.)

23

24

25

1              CERTIFICATE OF OFFICIAL REPORTER

2

3         I, Dana Hayden, Federal Official Realtime Court

4  Reporter, in and for the United States District Court

5  for the Western District of Arkansas, do hereby certify

6  that pursuant to Section 753, Title 28, United States

7  Code that the foregoing is a true and correct transcript

8  of the stenographically reported proceedings held in the

9  above-entitled matter and that the transcript page

10 format is in conformance with the regulations of the

11 Judicial Conference of the United States.

12         Dated this 22nd day of June 2016.

13

14

15

16         _____

17         Dana Hayden, CCR, RMR, CRR
           Federal Official Court Reporter

18

19

20

21

22

23

24

25

## $

**$100** [2] - 20:15, 53:15
**$20,000** [1] - 53:13
**$25,000** [1] - 20:14
**$250,000** [1] - 20:14

## 1

**1** [5] - 9:8, 12:8, 17:10, 17:17, 18:4
**1,103** [1] - 37:18
**10** [1] - 33:11
**11(c)(1)(C** [1] - 32:18
**12** [3] - 3:14, 16:13, 30:14
**123** [1] - 12:6
**13** [1] - 1:10
**134** [1] - 19:20
**139** [1] - 19:20
**14** [7] - 24:17, 25:11, 25:16, 27:16, 30:14, 45:11, 55:6
**140** [8] - 7:10, 7:11, 7:13, 9:18, 11:6, 11:9, 11:12, 12:2
**15** [4] - 27:18, 30:14, 33:11, 41:4
**1524** [1] - 1:14
**16** [5] - 7:8, 7:25, 8:2, 8:22, 9:17
**17** [1] - 4:6
**18** [4] - 14:10, 24:17, 25:16, 27:16
**18-month** [2] - 33:17, 35:14
**19** [2] - 7:13, 27:18
**1:42** [1] - 1:10

## 2

**2** [5] - 7:1, 12:8, 14:7, 18:4, 20:21
**2.7** [2] - 26:1, 26:3
**20** [4] - 33:4, 33:11, 35:17, 51:23
**2008** [1] - 25:4
**2012** [1] - 25:4
**2012-2013** [1] - 28:17
**2016** [2] - 1:10, 57:12
**2035** [2] - 33:4, 35:11
**2058** [1] - 35:9
**20s** [1] - 38:5
**24** [1] - 2:17
**28** [5] - 15:13, 15:25, 16:21, 17:2, 57:6
**280** [1] - 1:19
**2:48** [1] - 41:6
**2G1.3** [2] - 15:12, 15:24

## 3

**3** [3] - 7:1, 12:8, 18:4
**30** [2] - 31:23, 32:19
**31** [1] - 16:12
**32** [1] - 10:13
**34** [6] - 16:23, 17:10, 17:16, 17:19, 17:24, 18:5
**35** [2] - 1:24, 18:21
**3553(a** [12] - 14:14, 20:23, 22:7, 23:22, 28:7, 41:21, 41:24, 42:1, 44:22, 45:3, 45:6, 50:24
**3553(a)** [1] - 14:10
**360** [5] - 20:11, 27:6, 41:20, 48:20, 50:1
**3739** [1] - 1:19
**38** [1] - 18:6
**3:00** [1] - 41:5
**3:06** [1] - 41:6
**3:38** [1] - 56:22
**3rd** [1] - 4:11

## 4

**4** [2] - 6:25, 12:7
**40** [2] - 19:6, 19:10
**40-caliber** [1] - 29:21
**414** [1] - 1:14
**442-2306** [1] - 1:20
**45** [3] - 28:4, 41:16, 47:21
**479** [1] - 1:20
**479-441-0578** [1] - 1:16
**479-783-5125** [1] - 1:15
**4B1.5(b** [2] - 18:24, 19:25

## 5

**5** [2] - 6:25, 12:7
**50** [1] - 53:24
**5:15-CR-50080** [2] - 1:5, 2:3
**5th** [2] - 33:4, 35:11

## 6

**6** [6] - 3:15, 7:1, 9:9, 12:9, 18:4, 35:9
**6th** [1] - 4:4

## 7

**7** [2] - 6:25, 12:7
**72701** [1] - 1:25

**72703** [1] - 1:20
**72902** [1] - 1:15
**753** [1] - 57:6

## 8

**8** [2] - 6:25, 12:7
**80** [1] - 40:6

## A

**ability** [2] - 53:4, 53:6
**able** [4] - 4:8, 5:19, 49:8, 53:10
**above-entitled** [1] - 57:9
**absolute** [1] - 41:11
**absolutely** [3] - 38:2, 38:11, 45:15
**abuse** [5] - 16:13, 24:25, 25:9, 25:14, 25:15
**abused** [1] - 25:8
**acceptance** [2] - 18:10, 49:4
**accepted** [6] - 3:21, 28:15, 28:20, 32:19, 44:5
**accepting** [1] - 44:9
**access** [3] - 33:14, 33:22, 33:23
**accordance** [1] - 53:25
**account** [3] - 22:4, 42:24, 44:21
**accountable** [1] - 31:22
**achieve** [1] - 21:17
**achieved** [1] - 17:9
**acknowledged** [1] - 44:8
**action** [1] - 37:11
**actions** [2] - 36:24, 40:10
**activities** [5] - 3:11, 3:13, 3:20, 16:20, 48:25
**activity** [3] - 45:14, 49:13, 49:18
**acts** [3] - 24:2, 34:4, 34:14
**actual** [1] - 12:25
**add** [2] - 11:11, 18:5
**added** [1] - 12:2
**addendum** [7] - 4:14, 4:20, 5:1, 5:8, 5:13, 9:10
**addiction** [1] - 49:11
**addition** [3] - 5:12, 30:16, 32:12

**additional** [3] - 16:18, 33:23, 42:7
**address** [1] - 34:19
**adds** [1] - 45:10
**adequately** [2] - 12:24, 49:19
**adjourned** [2] - 56:21, 56:22
**adjusted** [6] - 17:15, 17:16, 17:18, 17:23, 18:6, 18:21
**adjustment** [3] - 17:20, 18:3, 18:9
**adjustments** [3] - 6:11, 18:7
**administrators** [1] - 33:16
**admission** [1] - 25:16
**admitted** [4] - 28:18, 28:20, 30:7, 33:16
**adopt** [2] - 12:19, 14:23
**advent** [1] - 38:21
**advice** [1] - 22:9
**advisory** [4] - 14:3, 14:6, 23:11, 23:14
**advocating** [2] - 32:22, 47:21
**affect** [2] - 10:4, 10:15
**affliction** [5] - 37:20, 37:21, 38:5, 39:24, 42:18
**afford** [2] - 55:12, 55:20
**afternoon** [3] - 2:7, 2:8, 13:16
**age** [3] - 3:13, 40:6, 47:8
**aggravating** [5] - 42:3, 45:2, 45:7, 46:6, 46:25
**ago** [5] - 9:4, 14:19, 14:25, 20:24, 48:22
**agree** [2] - 9:3, 19:11
**agreement** [5] - 3:23, 12:22, 13:4, 13:5, 18:13
**Alamo** [2] - 26:24, 27:2
**Alfaro** [22] - 1:18, 2:5, 2:22, 4:22, 5:6, 5:24, 6:20, 7:5, 9:16, 10:11, 11:20, 19:7, 20:16, 22:15, 27:25, 29:4, 35:3, 41:8, 45:17, 54:3, 55:23, 56:19
**ALFARO** [19] - 5:11, 5:25, 7:6, 7:12, 7:20, 8:1, 8:6, 8:11, 8:19,

**9:1, 9:19, 11:23,
19:11, 20:18, 35:4,
35:7, 36:1, 54:5,
56:20
**alleged** [1] - 3:10
**allocution** [1] - 41:2
**allow** [1] - 37:8
**allowed** [3] - 26:18, 27:20, 27:21
**allowing** [1] - 32:13
**alluded** [2] - 14:19, 20:24
**almost** [6] - 12:12, 33:4, 35:17, 42:2, 45:7, 46:15
**alternative** [1] - 51:24
**AMERICA** [1] - 1:3
**America** [2] - 24:13, 25:3
**amount** [3] - 6:15, 39:2, 53:19
**anally** [1] - 31:3
**analysis** [1] - 14:17
**answer** [5] - 5:3, 36:4, 37:24, 39:6, 40:15
**answered** [1] - 5:10
**answers** [1] - 39:13
**anytime** [1] - 33:1
**apologize** [2] - 7:20, 8:7
**appeal** [11] - 54:17, 54:18, 54:25, 55:4, 55:5, 55:6, 55:12, 55:17, 55:20, 55:24, 55:25
**appear** [1] - 15:4
**appeared** [2] - 3:15, 43:6
**applicable** [1] - 15:25
**application** [1] - 55:13
**applied** [2] - 16:6, 16:11
**apply** [2] - 42:1, 42:2
**applying** [2] - 19:2, 41:24
**appoint** [1] - 55:21
**appreciate** [2] - 5:18, 41:1
**approach** [1] - 35:8
**appropriate** [9] - 3:5, 13:11, 18:11, 23:22, 48:14, 48:18, 48:24, 49:12, 56:16
**approval** [1] - 3:23, 12:22
**approve** [1] - 12:19
**April** [1] - 4:4
**AR** [1] - 1:20
**area** [2] - 29:24, 35:2
**argue** [3] - 7:7, 24:19,

27:8
**argued** [4] - 24:20, 24:21, 24:23
**arguing** [2] - 23:7, 23:12
**argument** [2] - 22:13, 49:6
**ARKANSAS** [2] - 1:1, 1:10
**Arkansas** [5] - 1:15, 1:25, 36:8, 36:10, 57:5
**arrested** [1] - 28:16
**arrests** [1] - 10:23
**arriving** [2] - 13:11, 13:15
**articulate** [2] - 52:5, 52:21
**articulated** [1] - 9:4
**assault** [1] - 10:5
**assert** [1] - 7:15
**assessed** [1] - 53:4
**assessment** [3] - 20:15, 53:15, 53:17
**assist** [2] - 40:15, 55:15
**Assistant** [1] - 1:19
**attach** [1] - 25:21
**attached** [1] - 30:22
**attachments** [1] - 44:16
**attempts** [2] - 39:17, 39:20
**attitude** [1] - 49:3
**attorney** [11] - 2:23, 4:6, 4:18, 13:6, 27:5, 32:18, 40:4, 41:15, 47:20, 55:21, 55:22
**attorney's** [1] - 32:21
**Attorney's** [2] - 1:13, 32:17
**attorneys** [2] - 22:12, 34:1
**attracted** [1] - 29:2
**attractions** [1] - 29:1
**attributed** [2] - 11:8, 32:3
**authorities** [2] - 36:19, 37:7
**available** [6] - 22:5, 40:22, 50:21, 52:20, 53:24, 56:13
**Avenue** [1] - 1:14
**avoid** [2] - 21:10, 47:1
**award** [1] - 18:14
**awarded** [1] - 18:11
**aware** [3] - 5:21, 27:15, 55:3
**axes** [1] - 15:16
**axis** [2] - 15:16, 15:17

**B**

**background** [4] - 21:5, 44:25, 46:7, 46:11
**bad** [2] - 45:23, 45:24
**bargain** [1] - 27:8
**base** [4] - 15:13, 15:23, 16:4, 17:1
**based** [10] - 12:23, 17:21, 23:3, 24:2, 26:2, 36:7, 46:4, 51:19, 56:12, 56:13
**basement** [1] - 30:16
**basic** [2] - 16:25, 55:25
**basis** [1] - 55:4
**battle** [1] - 34:20
**beats** [1] - 30:14
**become** [1] - 32:5
**becomes** [1] - 27:18
**BEFORE** [1] - 1:9
**began** [2] - 16:13, 56:8
**begin** [3] - 3:6, 13:9, 14:17
**begins** [1] - 55:7
**behalf** [3] - 2:4, 2:5, 4:7
**behavior** [1] - 13:1
**behaviors** [1] - 38:11
**behind** [1] - 43:12
**believes** [2] - 15:3, 43:11
**below** [1] - 12:11
**bench** [1] - 13:15
**benefit** [3] - 27:8, 27:9, 52:19
**best** [2] - 38:3, 42:22
**better** [3] - 25:13, 25:17, 52:5
**between** [5] - 20:11, 20:14, 29:19, 40:25, 46:19
**Bexar** [1] - 29:20
**beyond** [1] - 26:4
**biggest** [1] - 23:4
**billion** [1] - 29:17
**bit** [2] - 6:22, 15:14
**Blvd** [1] - 1:19
**board** [1] - 42:3
**body** [2] - 39:21, 44:7
**bondage** [1] - 30:16
**book** [4] - 14:9, 14:12, 14:15, 21:15
**BOP** [5] - 10:4, 10:18, 33:21, 33:23, 40:8
**Bosnia** [1] - 29:23
**bottom** [1] - 13:2

**bounds** [1] - 30:15
**Box** [1] - 1:14
**boys** [6] - 31:7, 34:7, 34:12, 49:8, 50:14
**brain** [1] - 44:7
**brave** [1] - 29:22
**break** [1] - 46:17
**brief** [1] - 3:6
**briefly** [1] - 9:20
**brings** [2] - 3:7, 18:21
**broadly** [1] - 22:1
**BROOKS** [1] - 1:9
**brother** [1] - 37:3
**brought** [3] - 24:12, 34:7, 44:12
**Brown** [1] - 2:6
**Bureau** [12] - 35:25, 51:2, 51:5, 51:6, 51:10, 51:16, 52:4, 52:7, 52:9, 52:10, 53:9, 56:6
**business** [1] - 13:7
**byproduct** [1] - 54:22

**C**

**calculate** [3] - 14:2, 15:22, 17:13
**calculating** [1] - 19:10
**calculation** [16] - 13:23, 14:18, 14:20, 14:24, 15:6, 15:11, 15:25, 16:25, 17:7, 17:9, 18:2, 19:4, 20:17, 22:10, 23:15, 41:19
**calculator** [1] - 18:20
**cannot** [4] - 47:19, 53:19, 55:12, 55:20
**capable** [1] - 53:8
**care** [2] - 16:9, 34:12
**cares** [2] - 38:14, 38:16
**Carter** [1] - 20:19
**CASE** [1] - 1:5
**case** [51] - 2:2, 2:3, 2:15, 3:7, 4:22, 6:13, 11:1, 11:25, 12:23, 13:4, 13:12, 16:11, 17:16, 17:19, 18:23, 19:19, 23:10, 23:15, 25:7, 26:10, 26:21, 26:24, 27:2, 27:3, 27:4, 27:11, 29:6, 30:6, 31:12, 31:13, 31:15, 31:22, 32:20, 32:20, 40:19, 41:13, 41:18, 41:25, 42:1, 44:1, 45:4, 47:15, 48:19, 48:22, 50:21,

51:24, 53:12, 54:3, 54:19, 55:9
**cases** [8] - 6:12, 26:6, 26:22, 30:9, 37:16, 39:3, 44:4, 47:3
**categorical** [1] - 47:17
**categories** [1] - 20:2
**category** [7] - 15:18, 19:15, 19:22, 20:1, 20:2, 20:5, 46:22
**causation** [1] - 43:15
**causes** [1] - 44:6
**causing** [2] - 2:19
**CCR** [2] - 1:23, 57:17
**certain** [6] - 6:18, 6:21, 43:1, 44:23, 48:15, 49:7
**certainly** [6] - 22:21, 28:10, 37:24, 42:21, 48:19, 52:18
**CERTIFICATE** [1] - 57:1
**certify** [1] - 57:5
**chance** [2] - 27:22, 34:19
**change** [1] - 19:25
**channels** [1] - 39:18
**chapter** [2] - 14:11, 18:22
**characteristics** [7] - 16:2, 16:5, 17:3, 21:5, 31:25, 45:1, 46:8
**characterized** [1] - 16:19
**charge** [3] - 7:9, 9:20, 10:6
**charged** [3] - 3:18, 28:16, 43:22
**charges** [1] - 43:18
**chasing** [1] - 31:17
**child** [5] - 3:13, 6:12, 23:4, 25:9, 30:17
**childhood** [1] - 37:21
**children** [6] - 23:16, 24:5, 24:8, 24:12, 25:12, 47:4
**choice** [3] - 29:8, 29:10
**choose** [1] - 28:25
**chord** [1] - 29:5
**chose** [1] - 37:3
**circumstances** [6] - 21:2, 44:23, 45:3, 46:3, 47:15, 54:20
**cited** [1] - 30:9
**citizens** [2] - 39:24
**claiming** [1] - 9:10
**clarification** [1] - 9:14
**clarify** [1] - 9:8

**classification** [1] - 51:16
**classify** [1] - 8:6
**clean** [1] - 7:22
**clear** [1] - 23:2
**clearing** [1] - 8:7
**clerk** [1] - 55:15
**close** [2] - 5:18, 26:23
**clouding** [1] - 2:19
**Code** [2] - 14:10, 57:7
**code** [4] - 14:12, 14:15, 10:23, 31:1
**collectively** [1] - 53:17
**Colorado** [3] - 40:8, 51:18, 51:21
**combined** [2] - 18:6, 45:9, 47:7
**coming** [2] - 44:12, 44:18
**commission** [4] - 13:25, 14:4, 16:3, 22:10
**commit** [1] - 22:3
**commitment** [1] - 52:6
**committed** [12] - 11:13, 16:2, 17:13, 21:3, 24:1, 24:4, 27:13, 28:8, 31:10, 31:16, 34:4, 51:1
**community** [1] - 21:25
**comparatively** [1] - 24:9
**compare** [1] - 26:22
**comparison** [2] - 26:2, 31:13
**compelled** [1] - 50:18
**complete** [1] - 40:2
**completed** [1] - 33:20
**completely** [1] - 44:1
**complicated** [3] - 18:2, 19:4, 19:7
**comprehensive** [1] - 38:25
**computation** [1] - 19:8
**concede** [1] - 8:23
**conceded** [3] - 6:18, 8:4, 8:17
**conceding** [1] - 10:20
**concept** [2] - 45:22, 52:22
**conceptually** [1] - 52:6
**concern** [1] - 49:17
**concerned** [1] - 49:18
**concerns** [1] - 49:16
**concession** [2] - 6:24, 7:1
**concessions** [2] - 9:3, 11:23

**conclusion** [3] - 49:21, 50:19, 56:3
**concur** [2] - 19:8, 20:16
**concurrently** [1] - 28:4
**condition** [1] - 52:2
**conduct** [16] - 11:8, 11:13, 13:1, 16:16, 24:15, 26:12, 28:21, 30:7, 30:11, 30:23, 31:1, 31:2, 43:12, 45:10, 45:25, 47:14
**Conference** [1] - 57:11
**confessed** [3] - 27:3, 38:4
**confession** [1] - 28:23
**confinement** [1] - 40:8
**confirm** [2] - 4:21, 5:6
**conformance** [1] - 57:10
**congress** [1] - 21:20
**consent** [1] - 50:12
**consequence** [1] - 2:14
**consider** [7] - 14:2, 14:8, 20:23, 26:15, 32:22, 40:1, 40:4
**considerable** [1] - 56:12
**considerate** [1] - 27:15
**consideration** [11] - 11:18, 13:10, 13:15, 13:21, 21:1, 21:6, 22:8, 40:14, 46:23, 48:8, 56:14
**considerations** [1] - 27:12
**considered** [5] - 10:16, 10:22, 11:1, 17:6, 50:24
**consistent** [3] - 13:4, 18:12, 51:15
**consumed** [1] - 2:18
**contact** [2] - 16:20, 24:9
**contacted** [1] - 37:5
**contained** [1] - 9:23
**contempt** [1] - 37:12
**contend** [2] - 54:21, 55:1
**contents** [2] - 3:24, 4:25
**contesting** [2] - 9:24, 10:8
**context** [2] - 22:9, 23:22, 48:17
**continue** [2] - 13:16,

50:17
**continued** [1] - 37:10
**continuing** [1] - 12:11
**contribute** [1] - 39:12
**control** [3] - 16:9, 30:25, 41:22
**conventional** [1] - 37:1
**convicted** [4] - 21:7, 21:18, 43:19, 43:23
**conviction** [7] - 2:14, 12:24, 19:1, 44:1, 45:9, 54:19, 55:8
**convictions** [1] - 26:14
**cooperate** [1] - 37:7
**cooperated** [1] - 36:19
**cooperation** [6] - 36:24, 37:9, 37:10, 37:14, 40:2, 44:11
**copy** [2] - 35:8, 39:6
**correct** [13] - 2:23, 2:24, 6:5, 6:24, 7:4, 7:6, 7:12, 8:5, 8:18, 8:19, 9:1, 20:17, 57:7
**corrections** [1] - 12:20
**correctly** [1] - 41:14
**correlation** [1] - 46:19
**corresponding** [2] - 12:9, 15:9
**counsel** [3] - 28:1, 55:20, 55:24
**count** [3] - 3:9, 6:10, 6:11, 25:5, 27:16, 36:24, 37:9
**Count** [7] - 3:17, 12:24, 16:23, 17:11, 17:17, 51:3
**countries** [2] - 24:5, 36:22
**country** [1] - 24:4
**counts** [6] - 3:10, 3:18, 16:24, 17:21, 54:11, 54:14
**County** [1] - 29:20
**couple** [1] - 42:22
**course** [5] - 23:11, 32:19, 33:20, 46:11, 54:25
**court** [3] - 11:5, 26:5, 55:15
**Court** [121] - 1:24, 2:1, 2:10, 2:13, 3:15, 5:13, 5:16, 6:16, 8:22, 8:23, 9:7, 9:15, 10:14, 11:3, 11:17, 11:20, 12:1, 12:17, 12:18, 12:21, 12:23, 13:3, 13:10, 13:13,

13:16, 13:18, 13:21, 14:1, 14:6, 14:8, 14:23, 15:1, 15:3, 18:13, 20:10, 21:10, 21:13, 21:21, 22:4, 22:17, 22:18, 23:1, 23:2, 23:5, 23:12, 24:19, 24:20, 26:8, 26:12, 27:14, 28:14, 29:14, 32:9, 33:1, 35:17, 35:22, 40:22, 41:2, 41:3, 42:9, 42:14, 42:20, 43:1, 43:7, 43:8, 43:10, 43:13, 43:16, 43:23, 43:24, 44:2, 44:9, 44:20, 45:6, 45:16, 45:25, 46:14, 46:15, 47:2, 47:3, 47:6, 47:9, 47:12, 47:18, 47:19, 47:23, 48:10, 49:17, 49:18, 49:20, 49:22, 50:3, 50:8, 50:13, 50:16, 50:18, 50:20, 50:24, 50:25, 51:4, 51:8, 51:13, 51:17, 51:19, 52:3, 53:1, 53:4, 53:7, 53:11, 53:14, 54:11, 55:1, 55:13, 55:21, 56:15, 57:3, 57:4, 57:17
**COURT** [49] - 1:1, 2:1, 2:9, 2:17, 2:22, 2:25, 3:3, 3:5, 4:25, 5:3, 5:6, 5:12, 5:24, 6:1, 6:7, 7:11, 7:16, 7:21, 8:2, 8:10, 8:14, 8:20, 9:2, 9:13, 9:16, 10:11, 10:24, 11:25, 18:18, 19:12, 19:14, 20:19, 20:21, 27:24, 28:2, 35:2, 35:5, 35:15, 36:5, 36:12, 36:16, 40:17, 41:7, 54:6, 54:8, 54:15, 56:3, 56:19, 56:21
**Court's** [17] - 5:22, 9:3, 11:2, 11:10, 11:15, 15:1, 20:22, 21:1, 21:4, 21:6, 46:19, 49:16, 51:24, 52:14, 54:2, 55:7, 56:9
**courts** [1] - 42:6
**cousin** [1] - 38:3
**cover** [1] - 54:16
**covered** [1] - 19:1
**crime** [7] - 15:9, 16:2, 16:3, 19:1, 48:12,

48:14
**crimes** [10] - 17:13, 21:8, 21:18, 22:3, 27:13, 31:16, 42:16, 44:13, 47:17, 47:18
**criminal** [21] - 3:19, 12:25, 15:18, 19:2, 19:15, 19:16, 19:18, 19:21, 19:22, 19:25, 20:1, 20:4, 21:9, 24:3, 46:11, 46:13, 46:20, 46:21, 46:23, 46:24, 48:25
**cross** [1] - 37:17
**crossing** [1] - 3:12
**CRR** [2] - 1:23, 57:17
**curb** [1] - 38:10
**current** [1] - 42:16
**custody** [4] - 16:9, 36:11, 51:1, 56:4
**custom** [2] - 21:15, 21:21
**custom-made** [1] - 21:21
**custom-tailor** [1] - 21:15
**customary** [1] - 36:9
**cut** [3] - 35:24, 46:17, 46:20

## D

**daily** [1] - 37:2
**damaging** [1] - 38:11
**Dana** [3] - 1:23, 57:3, 57:17
**danger** [1] - 10:5
**date** [4] - 35:9, 35:10, 37:14, 55:7
**Dated** [1] - 57:12
**days** [3] - 6:17, 37:19, 55:6
**dealing** [1] - 14:20
**death** [2] - 29:19, 35:1
**decision** [11] - 11:2, 31:5, 31:8, 35:18, 37:2, 37:3, 40:3, 40:16, 41:23, 50:3
**decisions** [1] - 49:8
**defect** [1] - 54:23
**defendant** [17] - 1:7, 6:9, 9:5, 11:7, 11:13, 16:12, 19:3, 25:6, 26:21, 27:3, 27:5, 31:16, 42:13, 45:16, 53:6, 53:23, 56:4
**DEFENDANT** [13] - 1:17, 2:8, 2:16, 2:21, 2:24, 3:2, 3:4, 4:24, 5:2, 5:5, 36:15,

36:17, 56:2
**defendant's** [7] - 5:15, 6:25, 8:3, 11:4, 44:25, 53:4, 53:24
**defendants** [1] - 21:7
**Defender** [1] - 1:19
**defender's** [1] - 26:6
**defense** [6] - 7:8, 7:23, 9:10, 27:5, 41:15, 49:10
**deferred** [1] - 3:22
**defined** [1] - 44:1
**delineating** [1] - 30:12
**demeanor** [2] - 42:8, 49:3
**demons** [1] - 29:9
**denied** [1] - 31:8
**denies** [1] - 11:13
**deny** [1] - 11:3
**denying** [1] - 11:7
**department** [1] - 51:12
**dependent** [1] - 35:21
**depravity** [1] - 31:15
**deputy** [1] - 29:20
**described** [1] - 4:20
**deserve** [1] - 27:9
**designated** [1] - 52:9
**designation** [1] - 10:18
**designations** [1] - 51:6
**designator** [1] - 51:8
**desire** [1] - 39:23
**desires** [1] - 24:14
**desk** [1] - 37:17
**desperate** [1] - 38:6
**despite** [1] - 45:22
**deter** [1] - 49:23
**determinative** [1] - 7:3, 7:8, 7:14, 7:18, 7:24, 8:9, 8:15, 8:21, 8:24, 10:25, 11:16
**determine** [3] - 15:15, 15:18, 19:15
**deterrence** [4] - 32:12, 42:11, 49:16, 49:19
**deterrent** [1] - 21:25
**developed** [1] - 42:24
**development** [4] - 25:21, 26:4, 39:12, 39:13
**deviant** [1] - 24:14, 25:19
**diagnosed** [4] - 29:12, 43:3, 43:4, 52:1
**diagnosis** [1] - 43:10
**differences** [1] - 21:10
**different** [5] - 15:9, 17:8, 24:5, 36:22,

38:8
difficult [6] - 37:1,
  41:10, 44:18, 56:10,
  56:15
direct [1] - 46:19
disagree [1] - 34:6
disagrees [1] - 49:7
disappearing [1] -
  37:1
dismiss [1] - 54:14
dismissed [3] - 7:10,
  10:1, 10:7
disorder [6] - 29:11,
  43:4, 43:5, 43:14
disorders [1] - 34:20
disparity [1] - 47:2
District [4] - 26:25,
  27:1, 57:4, 57:5
DISTRICT [2] - 1:1, 1:1
division [1] - 51:6
DIVISION [1] - 1:2
docket [1] - 55:8
doctor [2] - 25:23,
  25:25
document [2] - 4:13,
  4:15
documented [2] -
  29:10, 45:11
documents [2] - 4:23,
  5:20
done [4] - 15:4, 28:19,
  28:21, 30:3
Donna [1] - 2:6
doubt [1] - 33:7
down [7] - 31:17,
  31:18, 45:19, 50:3,
  50:6, 50:7
downward [2] - 18:7,
  18:9
Dr [9] - 30:22, 32:1,
  32:3, 40:24, 43:2,
  43:3, 43:6, 43:9,
  44:17
driving [2] - 23:10,
  31:15
drugs [1] - 2:18
DSM [1] - 43:5
due [1] - 53:18
during [1] - 53:23
Dustin [1] - 2:4
dustin [1] - 1:13
Dustin.Roberts@
  usdoj.gov [1] - 1:16

E

e-mail [1] - 37:5
earliest [1] - 35:10
early [5] - 37:20, 38:5,
  38:7, 39:7, 42:23

earn [1] - 39:23
earnings [1] - 53:10
easily [2] - 23:23,
  36:21
East [2] - 1:24, 43:17
easy [2] - 23:25, 24:12
edges [2] - 44:23, 46:4
effect [4] - 2:19, 12:4,
  19:24, 52:14
effectively [1] - 47:8
effects [1] - 25:15
either [5] - 8:3, 8:17,
  11:19, 24:16, 40:22
eligibility [2] - 33:17,
  35:10
eligible [3] - 33:3,
  33:20, 35:16
empirical [2] - 52:11,
  52:17
employed [1] - 53:9
encountered [1] -
  42:14
encounters [1] - 42:23
end [6] - 11:12, 13:18,
  20:4, 48:23, 49:14,
  49:25
ended [1] - 24:5
enemy [1] - 37:22
energy [1] - 38:22
enforcement [3] -
  24:6, 25:17, 28:18
engage [6] - 3:11,
  3:13, 3:19, 16:15,
  31:1, 49:12
enhancement [7] -
  16:7, 16:10, 16:16,
  16:19, 18:24, 19:3,
  19:5
enhancements [1] -
  16:22
entered [2] - 3:16,
  13:6
entitled [2] - 18:8,
  57:9
entry [2] - 15:19,
  15:22
equal [1] - 17:17
escaped [1] - 28:10
escaping [1] - 28:9
essentially [3] - 3:10,
  25:10, 34:18
establish [2] - 38:23,
  39:17
established [1] -
  46:24
estimation [1] - 52:14
evaluate [1] - 13:16
evaluation [2] - 43:9,
  51:17
evaluations [2] -

30:21, 52:16
event [2] - 42:12,
  51:10
evil [1] - 43:15
evil-hearted [1] -
  43:15
exactly [1] - 29:5
example [1] - 23:13
exasperating [1] -
  37:18
exception [1] - 8:14
excuse [3] - 36:17,
  38:4, 39:11
exist [1] - 38:12
exists [1] - 38:2
experience [1] - 36:9
experienced [2] -
  37:14, 43:7
experiment [1] - 39:22
explain [4] - 4:25,
  13:20, 42:24, 54:17
explained [7] - 17:11,
  19:20, 19:24, 48:21,
  50:25, 56:1, 56:9
explaining [2] - 26:12,
  26:13
explains [1] - 4:15
explanation [3] - 13:9,
  43:12, 56:8
expressed [1] - 52:15
extended [1] - 44:11
extensive [1] - 40:19
extent [7] - 43:11,
  48:24, 49:7, 51:10,
  51:15, 52:22, 53:19
extraordinarily [3] -
  45:23, 46:5, 50:16
extremely [5] - 5:18,
  6:15, 14:22, 34:1,
  44:10

F

face [2] - 44:13, 45:23
faced [1] - 43:19,
  45:25
facility [3] - 40:9,
  51:18, 51:25
fact [7] - 16:8, 38:18,
  40:20, 44:2, 45:21,
  48:3, 49:21
factor [6] - 21:12,
  23:10, 45:8, 46:10,
  47:24, 49:1
factors [27] - 13:10,
  13:14, 13:17, 13:21,
  14:9, 14:12, 14:14,
  14:16, 20:22, 20:23,
  20:25, 22:7, 23:23,
  28:7, 41:21, 41:24,

42:2, 42:4, 44:22,
  45:4, 45:6, 46:8,
  50:2, 50:24, 56:14
facts [10] - 9:25, 10:8,
  23:3, 23:25, 31:20,
  31:25, 41:24, 42:1,
  44:19, 45:4
factual [4] - 9:9, 9:21,
  9:24, 11:18
fail [1] - 50:12
failed [1] - 27:20
fairly [1] - 54:20
family [1] - 32:4
far [3] - 10:4, 10:17,
  42:21
fashion [2] - 14:13,
  42:3
fashioning [1] - 21:21
Fax [1] - 1:16
Fayetteville [2] - 1:20,
  1:25
FAYETTEVILLE [2] -
  1:2, 1:10
federal [5] - 15:9,
  21:18, 26:6, 33:9,
  36:11
Federal [4] - 1:19,
  1:24, 57:3, 57:17
federally [1] - 28:16
fee [3] - 55:11, 55:13,
  55:14
fellow [1] - 39:24
felt [1] - 56:16
few [9] - 6:17, 9:4,
  14:19, 14:25, 20:24,
  34:22, 43:21, 48:21
field [1] - 43:8
fifteen [1] - 24:23
figure [2] - 12:4, 12:14
filed [8] - 4:3, 4:6,
  4:11, 4:13, 4:14, 6:2,
  25:6, 26:9
files [1] - 52:10
filing [6] - 6:7, 55:5,
  55:11, 55:12, 55:13,
  55:16
final [14] - 4:10, 4:12,
  5:7, 5:13, 6:4, 6:8,
  12:19, 12:22, 14:21,
  14:24, 15:2, 40:5,
  50:18, 50:19
finally [2] - 16:18, 50:7
Financial [1] - 53:25
financial [3] - 53:17,
  53:22
fine [6] - 20:14, 53:5,
  53:7, 53:11, 53:12,
  53:16
fired [1] - 24:7
first [13] - 13:22,

15:22, 21:18, 22:14,
  25:21, 28:22, 29:15,
  41:14, 46:15, 46:17,
  51:5, 51:15, 55:9
first-time [2] - 46:15,
  46:17
fits [1] - 48:12
five [6] - 3:9, 18:24,
  19:4, 19:5, 20:13,
  24:23
five-count [1] - 3:9
five-level [2] - 18:24,
  19:5
flag [1] - 52:8
flagged [1] - 52:24
fleeing [1] - 36:23
follow [4] - 15:20,
  20:7, 20:13, 51:13
followed [1] - 23:13
following [3] - 12:6,
  16:5, 53:21
follows [1] - 20:10
FOR [2] - 1:12, 1:17
force [2] - 30:10,
  31:18
forces [1] - 31:15
foregoing [1] - 57:7
foreign [2] - 36:20,
  40:12
format [1] - 57:10
formative [1] - 42:23
forms [2] - 55:15,
  55:16
Fort [1] - 1:15
forth [2] - 14:9, 45:4
forthcoming [3] -
  40:21, 42:15, 44:6
fought [2] - 29:18
four [6] - 17:8, 17:24,
  18:5, 23:20, 25:4,
  30:6
friend [6] - 5:18, 24:3,
  38:3, 43:17, 43:18,
  43:20
front [1] - 42:15
fulfill [3] - 21:17,
  24:14, 48:1
full [1] - 40:2
fully [4] - 2:25, 36:19,
  44:8, 53:8
fundamental [1] -
  54:23
funds [1] - 53:24
future [1] - 22:2

G

generic [1] - 16:4
genuine [1] - 42:9
genuinely [1] - 34:5

**given** [14] - 10:1, 10:7, 22:20, 34:19, 34:25, 36:2, 43:6, 46:20, 46:21, 48:24, 50:17, 52:14, 53:1, 56:11
**glad** [1] - 22:21
**Glock** [1] - 29:21
**God** [1] - 29:17
**GOVERNMENT** [1] - 1:12
**government** [19] - 4:5, 6:2, 6:18, 6:24, 8:4, 8:17, 13:6, 18:13, 18:15, 18:16, 22:25, 26:9, 28:11, 29:14, 31:11, 36:20, 40:2, 40:12, 54:13
**government's** [4] - 5:14, 23:24, 32:7, 34:6
**grabbing** [1] - 31:17
**grain** [1] - 37:22
**grains** [1] - 50:19
**granted** [2] - 18:18, 54:15
**gravity** [1] - 41:12
**great** [1] - 41:22
**greater** [5] - 21:16, 28:6, 47:16, 48:1, 49:16
**greatly** [1] - 49:18
**grew** [1] - 42:25
**grid** [4] - 15:16, 20:7, 37:1
**group** [5] - 9:3, 9:5, 17:13, 38:25, 39:4
**Group** [2] - 17:10, 17:17
**grouping** [2] - 17:23, 23:19
**groupings** [5] - 12:6, 12:8, 17:8, 17:10, 17:25
**Groups** [1] - 18:4
**groups** [4] - 6:25, 7:1, 17:6, 38:9
**guess** [2] - 6:20, 9:24
**guideline** [23] - 7:3, 7:8, 7:14, 7:18, 8:9, 14:5, 14:20, 15:10, 15:12, 15:15, 15:21, 15:25, 16:14, 19:23, 22:10, 27:6, 41:19, 48:15, 48:19, 49:25, 53:5, 53:7
**guideline-determinative** [5] - 7:3, 7:8, 7:14, 7:18, 8:9
**guidelines** [12] - 8:16,

10:15, 13:24, 14:18, 15:10, 18:23, 19:18, 20:9, 20:17, 23:11, 23:21, 48:13
**guilt** [2] - 30:2, 37:12
**guilty** [6] - 3:16, 3:22, 26:21, 27:6, 54:22, 54:24
**gun** [1] - 45:19

### H

**hand** [2] - 34:3, 34:4
**hands** [3] - 31:21, 45:14, 45:15
**hands-on** [3] - 31:21, 45:14, 45:15
**hard** [1] - 29:18
**harshest** [1] - 37:10
**hatred** [1] - 37:13
**Hayden** [3] - 1:23, 57:3, 57:17
**head** [2] - 29:21, 45:19
**health** [2] - 29:11, 32:13
**hear** [3] - 14:14, 22:21, 39:3
**heard** [3] - 9:17, 26:25, 38:3
**hearing** [9] - 2:10, 2:13, 3:6, 3:21, 3:22, 13:9, 13:17, 13:19, 56:3
**HEARING** [1] - 1:9
**heart** [1] - 31:16
**hearted** [1] - 43:15
**held** [4] - 29:20, 31:22, 45:18, 57:8
**help** [7] - 38:2, 38:16, 39:1, 39:11, 39:25, 49:11
**hereby** [1] - 57:5
**high** [4] - 24:24, 25:24, 41:16, 48:16
**highest** [6] - 17:9, 17:15, 17:16, 17:23, 20:3, 26:7
**highly** [1] - 33:7
**himself** [1] - 36:20
**history** [24] - 3:7, 15:18, 19:3, 19:15, 19:16, 19:18, 19:21, 19:22, 19:25, 20:1, 20:5, 21:4, 21:9, 24:3, 31:24, 44:25, 46:7, 46:10, 46:11, 46:13, 46:20, 46:21, 46:24
**hit** [1] - 27:14
**holds** [1] - 30:15

**honestly** [2] - 36:23, 39:1
**Honor** [47] - 5:11, 5:23, 5:25, 6:6, 7:6, 7:20, 8:1, 9:1, 9:7, 9:15, 9:19, 10:13, 10:23, 18:17, 19:11, 19:13, 20:18, 20:20, 22:24, 22:25, 26:20, 27:10, 27:23, 28:2, 28:3, 28:9, 30:4, 30:8, 34:17, 35:4, 36:8, 36:18, 36:25, 37:15, 37:23, 38:19, 38:24, 39:4, 39:7, 39:15, 40:1, 40:14, 54:5, 54:7, 54:14, 56:18, 56:20
**HONORABLE** [1] - 1:9
**hope** [3] - 27:6, 27:7, 34:18
**hopes** [4] - 34:18, 34:20, 34:24, 51:13
**hoping** [3] - 34:15, 40:11
**host** [1] - 14:8
**hours** [1] - 2:17
**housed** [1] - 33:18

### I

**idea** [2] - 27:15, 36:1
**identified** [1] - 5:21
**identity** [1] - 36:22
**ignored** [1] - 39:5
**illustrate** [1] - 32:16
**imagine** [2] - 37:16, 37:17
**immediately** [3] - 30:6, 53:18, 53:20
**impact** [3] - 8:16, 11:1, 42:10
**importance** [1] - 41:22
**important** [5] - 15:3, 21:13, 30:12, 39:6, 55:3
**importantly** [1] - 37:4
**impose** [12] - 2:10, 2:13, 13:3, 22:18, 23:1, 33:1, 50:4, 50:5, 50:20, 53:2, 53:12, 53:14
**imposed** [7] - 21:7, 28:5, 47:6, 53:1, 54:4, 54:9, 55:1
**imposes** [3] - 13:18, 49:23, 50:8
**imprisoned** [1] - 31:2
**imprisonment** [3] - 20:12, 28:4, 53:23

**improper** [1] - 55:2
**incarcerated** [2] - 26:16, 53:9
**incarcerating** [1] - 38:17
**incarceration** [1] - 20:11
**incentive** [1] - 37:13
**inclined** [1] - 46:17
**include** [2] - 20:25, 51:25
**included** [2] - 17:8, 17:23
**including** [2] - 12:13, 48:23
**incorporate** [1] - 14:23
**indicate** [1] - 45:12
**indicted** [1] - 3:8
**indictment** [4] - 3:9, 3:17, 51:3, 54:11
**individual** [4] - 21:14, 25:15, 27:21, 48:3
**individualized** [1] - 48:4
**individuals** [1] - 23:15
**inferring** [1] - 28:12
**influenced** [1] - 16:15
**information** [5] - 9:21, 9:22, 22:5, 40:22, 56:13
**informed** [4] - 3:24, 39:16, 39:19, 43:8
**initial** [2] - 4:3, 5:7
**Inmate** [1] - 53:25
**input** [1] - 19:14
**inputs** [1] - 20:6
**inquiry** [1] - 35:2
**instance** [3] - 15:3, 20:1, 24:25
**instances** [1] - 25:9
**instant** [1] - 18:25
**instead** [2] - 4:10, 27:7
**institution** [1] - 56:6
**instruct** [2] - 12:1, 15:1
**instructed** [2] - 12:17, 12:18
**instructions** [1] - 15:1
**intended** [1] - 54:2
**intent** [3] - 3:11, 3:12, 3:19
**interdiction** [1] - 39:7
**interested** [2] - 39:15, 39:19
**interesting** [2] - 32:20, 42:13
**interpret** [1] - 48:11
**intersect** [2] - 15:20,

20:8
**intersection** [1] - 20:8
**intervention** [1] - 38:7
**interview** [1] - 28:18
**introduction** [1] - 37:21
**invest** [1] - 38:22
**investigation** [1] - 52:12
**investigative** [2] - 3:25, 52:18
**involuntary** [1] - 54:22
**involved** [1] - 27:1
**involves** [3] - 13:23, 21:4, 21:5
**involving** [2] - 46:1, 47:3
**Islands** [2] - 24:6, 25:5
**issue** [2] - 10:25, 17:14
**issues** [2] - 8:24, 55:24
**itemize** [1] - 6:16
**itemized** [2] - 9:6, 22:7
**IV** [4] - 19:22, 20:2, 20:5, 46:22

### J

**jail** [1] - 26:11
**January** [2] - 3:15, 4:1
**Joe** [2] - 1:18, 2:5
**joe_alfaro@fd.org** [1] - 1:21
**judge** [2] - 8:6, 8:12
**Judge** [23] - 7:13, 8:19, 10:10, 11:24, 28:19, 29:5, 29:12, 30:24, 31:7, 31:13, 31:23, 32:2, 32:7, 32:23, 33:11, 33:25, 34:3, 34:9, 34:14, 34:25, 35:7, 36:4, 45:17
**judges** [2] - 29:16, 39:2
**judgment** [2] - 50:25, 55:8
**Judicial** [1] - 57:11
**judicial** [1] - 10:2
**June** [1] - 57:12
**justice** [2] - 27:13, 27:19

### K

**keep** [2] - 39:16, 39:19
**kid** [1] - 27:22
**kids** [1] - 27:16
**kind** [5] - 7:18, 14:11,

38:6, 46:15, 51:9
**knife** [1] - 45:19
**knifepoint** [1] - 30:15
**knowing** [3] - 29:1, 29:2, 49:24
**knowingly** [2] - 3:12, 3:18
**knowledge** [2] - 35:20, 36:6
**known** [8] - 14:10, 15:16, 15:17, 15:23, 25:16, 29:24, 43:4, 43:5
**knows** [2] - 25:13, 43:18

### L

**lack** [1] - 46:23
**laid** [2] - 17:1, 19:17
**land** [1] - 29:24
**large** [2] - 30:5, 41:21
**last** [3] - 2:17, 6:17, 54:16
**late** [1] - 6:19
**law** [11] - 14:9, 21:24, 24:6, 25:16, 28:18, 36:7, 49:2, 49:5, 49:6, 49:10, 49:15
**least** [12] - 7:2, 16:8, 23:20, 27:12, 27:15, 32:3, 42:10, 42:22, 43:13, 44:3, 46:17, 55:25
**left** [2] - 35:5, 35:17
**legal** [1] - 3:1
**legally** [1] - 55:2
**length** [1] - 48:6
**lengthy** [1] - 33:8
**lenient** [1] - 32:15
**leper** [1] - 29:3
**less** [1] - 49:10
**letter** [5] - 5:16, 5:19, 29:14, 29:15, 43:16
**letters** [7] - 26:11, 28:13, 29:7, 29:13, 30:21, 40:23, 44:16
**level** [2] - 12:13, 12:14, 15:13, 15:17, 15:23, 15:24, 16:4, 16:7, 16:10, 16:16, 16:18, 16:23, 17:1, 17:9, 17:15, 17:16, 17:18, 17:24, 18:3, 18:6, 18:9, 18:14, 18:17, 18:21, 18:24, 19:5, 19:6, 19:9
**levels** [4] - 16:22, 18:5, 18:19, 19:4
**liable** [1] - 11:8

**life** [28] - 20:12, 20:14, 23:1, 24:19, 25:3, 27:7, 27:23, 29:19, 30:13, 32:2, 32:22, 35:19, 35:23, 35:25, 41:20, 47:5, 47:6, 47:9, 47:11, 47:14, 48:20, 48:23, 50:1, 50:5, 50:22, 51:3, 53:1
**light** [2] - 6:18, 45:7
**lightly** [1] - 23:2
**likelihood** [2] - 26:2, 26:8
**likely** [4] - 26:3, 45:12, 51:8, 55:9
**limit** [2] - 55:5, 55:6
**line** [3] - 3:12, 13:2, 30:12
**lines** [2] - 20:8, 52:3
**listed** [1] - 26:22
**literally** [1] - 18:20
**Littleton** [3] - 40:8, 51:18, 51:21
**live** [3] - 28:25, 29:4, 34:22
**located** [1] - 39:6
**long-term** [1] - 52:25
**look** [12] - 16:1, 16:24, 19:16, 21:14, 23:14, 30:24, 31:9, 34:2, 42:1, 48:2, 48:16, 51:7
**looking** [5] - 19:2, 26:10, 34:10, 39:9, 45:3
**looks** [2] - 44:21, 48:10
**loose** [1] - 35:25
**lose** [1] - 47:19
**lost** [1] - 39:5
**louder** [1] - 40:10
**love** [1] - 40:14
**loves** [2] - 34:5, 34:12
**lowest** [1] - 20:3

### M

**machine** [1] - 1:22
**mail** [1] - 37:5
**maintain** [1] - 8:11
**maintaining** [1] - 7:23
**male** [1] - 32:4
**man** [6] - 23:17, 25:13, 26:1, 34:23, 36:18, 36:19
**mandatory** [1] - 53:14
**manner** [2] - 16:1, 21:3, 21:22
**Marshall** [2] - 24:6,

25:5
**Marshals** [1] - 56:5
**materials** [2] - 5:21, 45:5
**mathematical** [1] - 12:9
**matter** [3] - 2:1, 3:1, 57:9
**matters** [2] - 11:18, 19:5
**maximum** [1] - 48:9
**mean** [2] - 29:8, 48:12
**means** [5] - 13:2, 14:15, 27:19, 38:7, 41:21
**meant** [2] - 38:10, 47:8
**medications** [1] - 2:18
**meet** [2] - 4:18, 4:22
**member** [2] - 32:4, 34:23
**memo** [8] - 10:9, 25:6, 25:7, 25:20, 26:22, 30:10, 32:1, 34:17
**memorandum** [2] - 5:15
**memorandums** [2] - 44:15, 44:16
**memos** [1] - 26:9
**men** [1] - 26:19
**mental** [3] - 29:10, 32:13, 34:19
**mentioned** [6] - 12:2, 17:4, 22:6, 45:5, 46:9, 50:6
**merely** [2] - 11:7, 14:5
**met** [2] - 28:22, 37:12
**method** [1] - 21:3
**Middle** [1] - 43:17
**middle** [2] - 20:4, 31:17
**might** [7] - 11:21, 22:3, 22:13, 22:17, 22:18, 35:24, 52:19
**mind** [3] - 2:19, 27:12, 39:21
**mines** [1] - 29:25
**minimum** [1] - 20:13
**minor** [5] - 3:11, 3:19, 16:15, 16:20, 17:22
**minors** [13] - 16:8, 23:20, 25:1, 26:16, 26:18, 27:1, 29:2, 31:1, 31:17, 34:5, 46:2, 50:12
**minutes** [1] - 41:4
**mitigate** [1] - 44:23
**mitigating** [15] - 30:24, 31:9, 31:20, 42:4, 42:12, 42:20,

43:2, 43:25, 44:2, 44:10, 44:19, 44:21, 46:5, 46:9, 46:23
**mitigation** [2] - 22:17, 39:8
**modalities** [1] - 52:13, 52:19
**moderate** [1] - 25:24
**molestation** [5] - 23:16, 23:17, 24:2, 24:4, 32:4
**molested** [2] - 26:19, 27:17
**molester** [1] - 23:4
**molesting** [1] - 24:8
**moment** [3] - 6:22, 12:15, 14:17
**moments** [5] - 9:4, 14:19, 14:25, 20:24, 48:21
**months** [7] - 20:11, 35:19, 35:24, 41:20, 48:20, 50:1, 50:5
**most** [5] - 23:4, 37:4, 37:18, 44:22, 45:15, 47:12, 47:22, 49:9, 52:10
**mother** [2] - 37:3, 38:3
**motion** [3] - 18:13, 18:18, 54:15
**Mountain** [1] - 1:24
**move** [2] - 20:21, 54:13
**moved** [1] - 24:3
**moves** [1] - 18:16
**MR** [32] - 5:11, 5:23, 5:25, 6:6, 7:6, 7:12, 7:20, 8:1, 8:6, 8:11, 8:19, 9:1, 9:7, 9:14, 9:19, 10:13, 11:23, 18:16, 19:11, 19:13, 20:18, 20:20, 22:24, 35:4, 35:7, 36:1, 36:7, 54:5, 54:7, 54:13, 56:18, 56:20
**multiple** [4] - 6:10, 6:11, 6:12, 17:21
**must** [6] - 14:1, 14:2, 14:6, 14:8, 15:22, 43:25

### N

**narrow** [1] - 54:20
**nature** [7] - 19:7, 21:2, 37:17, 41:11, 44:23, 46:3, 47:15
**nearing** [1] - 33:17
**necessary** [6] - 10:19, 21:16, 28:7, 33:24,

43:2, 43:25, 44:2, 44:10, 44:19, 44:21, 46:5, 46:9, 46:23
**need** [14] - 4:20, 6:15, 8:23, 10:16, 11:17, 12:5, 23:8, 32:11, 47:1, 48:10, 50:7, 52:23, 54:16, 54:17
**needs** [2] - 10:14, 12:10
**negative** [1] - 38:10
**nephew** [2] - 24:2, 50:13
**nephew's** [1] - 24:3
**net** [1] - 12:4
**network** [3] - 38:15, 38:21, 39:18
**never** [12] - 24:23, 25:9, 26:13, 27:20, 27:21, 28:10, 29:22, 31:2, 31:3, 32:19, 47:9
**new** [2] - 18:21, 36:22
**next** [5] - 2:1, 18:22, 22:11, 33:11, 55:10
**night** [1] - 29:21
**nine** [2] - 19:21, 38:24
**nine-page** [1] - 38:24
**NO** [1] - 1:5
**none** [2] - 37:14, 38:7
**nonetheless** [1] - 43:20
**nonguideline** [6] - 7:24, 8:15, 8:21, 8:24, 10:25, 11:16
**nonguideline-determinative** [6] - 7:24, 8:15, 8:21, 8:24, 10:25, 11:16
**normal** [1] - 29:17
**noted** [2] - 9:9, 10:9
**nothing** [2] - 38:8, 38:11
**notice** [3] - 55:6, 55:12, 55:17
**notified** [1] - 51:11
**November** [2] - 33:4, 35:11
**number** [7] - 2:3, 23:5, 27:18, 30:5, 36:21, 45:15, 48:16
**Number** [3] - 8:2, 8:22, 9:17
**numerous** [1] - 6:8

### O

**object** [2] - 10:9, 25:22
**objecting** [1] - 9:22
**Objection** [3] - 8:2, 8:22, 9:17

**objection** [11] - 4:5, 6:2, 6:3, 7:7, 7:8, 7:14, 7:17, 7:24, 11:4, 11:5, 11:10
**objections** [26] - 4:6, 4:9, 4:16, 6:2, 6:8, 6:10, 6:14, 6:16, 6:18, 6:21, 7:2, 7:3, 8:3, 8:15, 8:16, 8:21, 9:6, 9:8, 9:9, 11:16, 11:22, 12:16, 14:20, 17:5, 17:25
**objective** [1] - 21:9
**obligated** [1] - 22:19
**obviously** [4] - 12:15, 45:2, 49:17, 56:10
**occurred** [1] - 48:25
**odd** [1] - 51:9
**oddly** [1] - 51:5
**OF** [4] - 1:1, 1:3, 1:9, 57:1
**offend** [1] - 50:18
**offender** [4] - 33:15, 35:12, 40:9, 46:17
**offenders** [6] - 26:3, 33:18, 34:8, 38:17, 46:15, 52:12
**offense** [37] - 10:1, 12:13, 12:24, 15:11, 15:12, 15:13, 15:17, 15:23, 16:4, 16:5, 17:1, 17:3, 17:9, 17:15, 17:16, 17:18, 17:24, 18:6, 18:21, 18:25, 19:6, 19:9, 21:2, 21:23, 23:8, 31:10, 31:21, 41:11, 44:24, 45:9, 46:3, 47:10, 48:6, 48:7, 48:18
**offenses** [8] - 16:19, 28:5, 28:8, 30:4, 42:7, 42:17, 46:1, 47:4
**offer** [5] - 22:12, 32:17, 32:21, 39:10, 39:11
**offered** [1] - 52:1
**office** [3] - 18:9, 26:6, 32:21
**Office** [2] - 1:13, 32:18
**officer** [6] - 4:3, 4:8, 4:15, 10:19, 11:11, 12:3
**OFFICIAL** [1] - 57:1
**Official** [3] - 1:24, 57:3, 57:17
**often** [1] - 42:19
**oftentimes** [1] - 14:13
**old** [5] - 3:14, 16:12,

16:13, 34:22, 40:6
**older** [1] - 42:25
**once** [1] - 15:19
**One** [7] - 3:17, 12:24, 16:23, 17:11, 17:17, 51:3
**one** [33] - 3:17, 4:5, 6:2, 7:17, 8:7, 15:16, 18:3, 18:14, 18:17, 23:12, 23:18, 24:20, 26:23, 26:24, 27:12, 27:22, 28:15, 28:20, 29:15, 31:7, 31:11, 31:15, 32:21, 34:3, 34:21, 35:2, 36:4, 38:13, 38:14, 38:22, 49:15, 55:9
**one-level** [2] - 18:3, 18:17
**ones** [3] - 8:9, 8:13, 30:7
**ongoing** [1] - 25:1
**open** [2] - 42:15, 44:5
**opinion** [1] - 30:19
**opportunity** [7] - 5:19, 22:16, 22:21, 34:25, 40:14, 50:17, 51:6
**opposed** [3] - 34:25, 35:23, 43:14
**option** [2] - 39:12, 50:21
**options** [1] - 39:25
**order** [2] - 15:14, 19:15
**originally** [1] - 3:8
**otherwise** [4] - 12:18, 22:3, 22:18, 54:24
**outside** [1] - 24:3
**outstanding** [3] - 6:9, 24:17, 25:23
**overall** [3] - 24:15, 32:24, 45:25
**overrule** [2] - 11:3, 11:10
**overseas** [1] - 40:12
**overtime** [1] - 12:3
**own** [7] - 24:14, 25:16, 25:19, 25:25, 34:8, 47:20, 49:9

---

## P

**p.m** [4] - 1:10, 41:6, 56:22
**P.O** [1] - 1:14
**Page** [1] - 7:13
**page** [3] - 29:15, 38:24, 57:9
**paid** [1] - 53:22
**paper** [1] - 55:7

**paperwork** [2] - 52:6, 52:8
**paragraph** [12] - 7:10, 7:11, 7:13, 9:18, 10:8, 11:6, 11:9, 11:12, 11:14, 12:2, 12:6, 12:12
**paragraphs** [2] - 12:10, 19:20
**Parker** [1] - 1:14
**parole** [5] - 33:3, 33:17, 33:20, 35:9, 35:16
**paroled** [1] - 36:10
**part** [7] - 11:19, 13:22, 24:10, 34:9, 44:22, 49:9, 55:9
**participant** [1] - 16:14
**participate** [1] - 52:15
**participation** [1] - 52:24
**parties** [1] - 22:12
**parts** [1] - 13:22
**past** [4] - 25:10, 37:18, 42:9, 42:17
**pay** [4] - 53:5, 53:6, 53:19, 55:13
**payable** [1] - 53:18
**payments** [2] - 53:11, 53:20
**pedophile** [4] - 24:1, 25:11, 26:13, 49:21
**pedophilia** [1] - 29:11
**pedophiliac** [1] - 43:5
**penalties** [1] - 53:18
**penalty** [1] - 53:22
**pending** [1] - 56:5
**penetrate** [1] - 31:3
**people** [2] - 21:18, 38:15
**perceive** [1] - 29:6
**percent** [1] - 53:24
**perfect** [2] - 31:13, 55:16
**perform** [1] - 16:25
**perhaps** [1] - 23:4
**period** [3] - 20:11, 20:12, 25:3
**permission** [1] - 45:21
**persecuted** [1] - 29:3
**person** [11] - 30:14, 30:19, 32:5, 34:2, 34:4, 34:5, 34:11, 43:6, 49:4, 52:10
**personal** [5] - 21:4, 42:17, 44:25, 46:7, 46:10
**personally** [2] - 39:16, 51:22
**perspective** [1] -

23:24
**persuaded** [3] - 50:16, 53:5, 53:8
**pertinent** [1] - 20:25
**Phase** [2] - 14:7, 20:21
**Phone** [1] - 1:15
**pictures** [2] - 30:17, 31:3
**place** [5] - 13:22, 14:9, 14:15, 21:19, 41:4
**placed** [1] - 51:25
**placement** [1] - 10:4
**places** [1] - 19:22
**Plaintiff** [1] - 1:4
**planning** [1] - 10:18
**plea** [11] - 3:16, 3:21, 3:22, 3:23, 12:22, 13:4, 13:5, 18:12, 32:18, 54:22, 54:24
**plead** [1] - 27:5
**pleading** [1] - 37:8
**pled** [1] - 26:21
**pledge** [1] - 39:15
**point** [17] - 2:11, 3:7, 6:23, 7:2, 7:4, 14:8, 15:22, 18:8, 20:8, 23:18, 24:18, 31:14, 32:6, 32:24, 44:11, 45:17
**pointed** [1] - 31:12
**points** [5] - 15:19, 19:19, 19:21, 43:21
**polite** [2] - 49:12, 50:11
**polluted** [1] - 29:24
**pondered** [1] - 37:2
**pool** [1] - 34:8
**pornography** [2] - 30:17, 31:4
**portion** [1] - 13:9
**portrayed** [1] - 49:4
**position** [2] - 12:22, 24:7
**positioned** [1] - 52:17
**possibility** [1] - 48:9
**possible** [4] - 37:10, 38:18, 38:20, 40:6
**possibly** [1] - 45:24
**potential** [1] - 41:12
**potentially** [1] - 9:20
**practice** [1] - 36:9
**pre** [1] - 38:14
**precisely** [2] - 13:8, 52:22
**predilections** [2] - 44:6, 49:23
**preferences** [1] - 29:19
**premise** [1] - 11:5

**preoffenders** [2] - 38:12, 39:9
**preoffending** [6] - 38:15, 38:21, 38:25, 39:4, 39:18, 39:25
**prepared** [1] - 15:2
**present** [1] - 53:6
**presented** [3] - 23:5, 26:5, 32:18
**presentence** [15] - 3:24, 4:4, 4:10, 4:13, 4:19, 5:1, 5:8, 5:13, 6:4, 6:8, 12:19, 14:21, 14:25, 15:2, 44:14
**prevent** [2] - 37:24, 38:20
**prevention** [1] - 39:8
**prey** [1] - 24:12
**prison** [4] - 33:9, 35:1, 36:10, 47:8
**Prisons** [12] - 35:25, 51:2, 51:5, 51:7, 51:11, 51:16, 52:4, 52:7, 52:9, 52:11, 53:10, 56:6
**prisons** [1] - 51:12
**probation** [2] - 2:6, 4:3, 4:8, 4:15, 10:19, 11:11, 12:3, 18:8
**procedural** [1] - 3:6
**procedurally** [1] - 55:2
**proceed** [2] - 22:23, 28:1
**Proceedings** [1] - 1:22
**proceedings** [4] - 2:23, 54:23, 56:22, 57:8
**process** [4] - 4:1, 10:2, 14:7, 20:22
**proclaimed** [1] - 24:1
**produce** [1] - 31:4
**producing** [1] - 30:17
**productive** [1] - 34:23
**professional** [1] - 39:17
**profound** [1] - 44:4
**program** [7] - 33:15, 33:16, 33:18, 33:19, 33:25, 35:13, 35:14
**Program** [1] - 54:1
**programs** [2] - 33:24, 52:15
**prohibited** [1] - 16:15
**projected** [1] - 35:9
**prolific** [1] - 23:4
**promote** [1] - 21:23
**promoting** [1] - 49:1
**proper** [1] - 6:20

properly [1] - 10:22
proposal [2] - 38:25, 39:5
proposed [1] - 40:5
protect [3] - 22:2, 23:8, 50:8
protecting [1] - 32:12
prove [2] - 10:19, 39:22
provide [1] - 48:10
provides [1] - 16:14
providing [3] - 23:9, 23:23, 27:13
provision [1] - 19:23
proxy [1] - 47:14
PSR [9] - 7:10, 9:18, 31:6, 32:1, 32:3, 40:19, 40:23, 45:5, 45:11
psychological [4] - 43:3, 43:12, 43:14, 52:2
psychosexual [2] - 25:21, 26:4
Public [1] - 1:19
public [6] - 22:2, 23:8, 24:7, 32:12, 33:19, 50:8
pull [1] - 29:22
punishing [1] - 26:17
punishment [14] - 15:21, 23:9, 23:23, 24:18, 32:11, 37:10, 47:16, 48:11, 48:12, 48:20, 48:22, 49:19, 50:21
punishments [1] - 13:25
purports [1] - 11:6
purpose [8] - 2:9, 2:12, 23:9, 32:6, 45:8, 48:8, 49:3, 55:21
purposely [1] - 29:23
purposes [9] - 10:16, 17:7, 17:23, 21:17, 21:20, 22:6, 25:19, 48:2, 48:3
pursuant [4] - 10:13, 18:24, 19:17, 57:6
put [3] - 10:2, 45:19
putting [1] - 10:18

## Q

questions [4] - 5:4, 5:10, 40:15, 40:18
quite [3] - 40:19, 40:21, 45:24

## R

raised [1] - 6:9
raising [1] - 32:6
range [17] - 13:24, 14:2, 14:5, 14:6, 15:15, 15:21, 41:13, 41:21, 45:11, 48:15, 48:19, 48:23, 49:25, 50:1, 53:5, 53:7
rate [1] - 53:23
rather [2] - 11:7, 46:12
reaching [1] - 31:18
read [3] - 5:19, 25:23, 26:4, 28:13, 28:14, 29:7, 44:14, 44:15
realize [2] - 30:23, 30:25
realized [1] - 47:5
really [6] - 13:14, 40:25, 41:22, 41:25, 45:6, 48:16
realtime [1] - 1:22
Realtime [1] - 57:3
reason [9] - 10:7, 11:2, 14:22, 34:7, 34:9, 34:10, 43:24, 46:16, 54:3
reasons [7] - 15:5, 19:20, 34:16, 48:21, 50:23, 53:11
receive [2] - 18:19, 18:23
received [5] - 5:7, 5:14, 5:16, 22:9, 43:16
recess [2] - 41:3, 41:6
recidivating [1] - 26:2
recidivism [2] - 25:24, 26:8
recitation [1] - 9:3
recognize [5] - 7:15, 8:12, 43:13, 43:25, 50:12
recognizes [1] - 49:9
recognizing [1] - 51:5
recommend [4] - 14:1, 20:10, 40:8, 51:17
recommendation [6] - 14:3, 22:13, 41:16, 51:24, 52:4, 52:7
recommendations [3] - 51:4, 51:7, 51:14
recommended [2] - 14:6, 18:9
recommends [1] - 22:25
record [4] - 4:21, 5:7, 7:22, 11:21
recorded [2] - 1:22, 28:17
records [1] - 11:6
recrimination [1] - 37:13
reduce [2] - 39:1, 39:2
reduces [1] - 23:18
reduction [3] - 18:14, 18:17, 18:20
refer [1] - 53:17
reference [3] - 14:24, 25:20, 40:24
referred [2] - 14:13, 30:22
referring [3] - 7:9, 10:21, 32:8
reflect [3] - 26:15, 48:5, 49:19
reflects [2] - 12:25, 21:22
regard [6] - 11:15, 16:23, 40:20, 47:1, 47:16, 55:24
regarding [1] - 31:24
regardless [1] - 55:4
regards [1] - 32:11
regret [1] - 40:11
regulations [1] - 57:10
rehabilitate [1] - 39:23
rehabilitated [1] - 32:13
rehabilitation [1] - 39:20
rehabilitative [1] - 39:18
relatively [1] - 33:13
release [6] - 20:12, 25:25, 33:3, 35:9, 40:6, 53:3
released [7] - 33:6, 33:7, 33:19, 34:21, 35:11, 35:12, 36:11
relevant [3] - 24:15, 30:7, 45:10
remain [5] - 2:11, 7:2, 12:8, 17:14, 17:25
remainder [1] - 13:17
remained [1] - 6:9
remaining [4] - 33:9, 41:8, 54:10, 54:14
remains [3] - 7:17, 43:20, 45:24
remanded [1] - 56:4
remorse [2] - 37:12, 40:11
remorseful [2] - 28:21, 30:2
remotely [1] - 38:20
removed [3] - 10:3, 12:7, 24:11
reoffend [2] - 32:9, 34:24
repetition [1] - 49:17
rephrase [1] - 9:21
report [19] - 3:25, 4:4, 4:10, 4:13, 5:1, 5:13, 6:4, 6:8, 9:23, 12:19, 14:21, 14:25, 15:2, 32:1, 40:24, 43:2, 43:9, 44:15, 44:17
reported [1] - 57:8
Reporter [3] - 1:24, 57:4, 57:17
REPORTER [1] - 57:1
reports [3] - 4:19, 5:8, 10:20
represent [1] - 55:22
representation [2] - 3:1, 51:20
represented [1] - 55:19
represents [1] - 49:15
reputable [1] - 34:1
request [5] - 28:3, 40:3, 40:7, 51:19, 55:18
requested [4] - 31:7, 32:25, 33:2, 33:13
requesting [1] - 32:14
requests [1] - 34:24
require [2] - 4:18, 12:3
required [2] - 53:20, 56:14
research [3] - 39:12, 39:13, 52:18
resisting [1] - 44:11
resolve [1] - 4:8
resolved [5] - 4:16, 4:17, 6:4, 12:16, 18:1
resonating [1] - 28:24
respect [5] - 21:24, 31:4, 49:1, 49:5, 49:15
respected [1] - 31:8
respectfully [4] - 28:3, 34:24, 40:3, 40:7
respects [3] - 43:1, 44:24, 49:5
response [1] - 4:5
Responsibility [1] - 53:25
responsibility [8] - 18:10, 28:15, 28:20, 36:24, 37:11, 44:5, 44:9, 49:4
responsible [1] - 52:11
rest [1] - 47:9
results [2] - 13:24, 25:14
retain [1] - 55:20
retired [1] - 51:9
review [5] - 3:6, 4:23, 5:22, 21:1, 21:4
reviewed [4] - 5:9, 5:14, 45:6, 47:2
revised [1] - 14:25, 15:2
revision [1] - 12:10
revisions [3] - 12:4, 12:17, 12:20
rights [2] - 54:18, 55:25
ring [1] - 48:15
risk [2] - 10:5, 25:24
Rivera [1] - 31:13
Rivera's [1] - 31:22
RMR [2] - 1:23, 57:17
ROBERTS [13] - 5:23, 6:6, 9:7, 9:14, 10:13, 18:16, 19:13, 20:20, 22:24, 36:7, 54:7, 54:13, 56:18
Roberts [14] - 1:13, 2:4, 5:20, 9:2, 10:12, 18:15, 19:12, 22:14, 22:23, 27:24, 36:6, 54:6, 54:10, 56:17
rolls [1] - 36:11
room [2] - 25:14, 46:22
rule [3] - 8:12, 8:22, 11:17
Rule [1] - 10:13
rules [4] - 4:18, 6:11, 17:12, 18:1
ruling [3] - 8:24, 10:14, 11:15
run [2] - 28:4, 55:7

## S

safe [1] - 39:11
sand [1] - 50:19
satisfied [1] - 2:25
scale [2] - 30:5, 44:9
schedule [1] - 53:21
scheme [1] - 19:17
school [1] - 32:5
score [3] - 10:5, 19:19, 19:21
search [1] - 38:6
seated [2] - 2:11, 41:9
second [5] - 7:22, 14:7, 19:14, 20:22, 22:15
section [1] - 15:9
Section [5] - 14:10, 15:12, 15:24, 18:24, 19:24, 57:6

**see** [7] - 8:22, 29:13, 34:3, 34:11, 34:15, 40:11, 42:18
**seek** [2] - 11:21, 55:5
**seeking** [1] - 8:23
**seem** [1] - 38:22
**sees** [1] - 46:14
**self** [1] - 24:1
**self-proclaimed** [1] - 24:1
**send** [1] - 52:9
**senior** [1] - 52:10
**sense** [8] - 31:20, 38:19, 42:12, 42:13, 43:2, 44:3, 46:6, 46:25
**sent** [1] - 32:20
**sentence** [48] - 2:13, 11:11, 12:1, 13:3, 13:11, 13:18, 20:10, 21:15, 21:17, 21:21, 21:22, 22:1, 22:18, 23:1, 24:19, 27:6, 27:23, 28:4, 30:13, 32:14, 32:25, 33:2, 33:8, 33:13, 34:25, 35:18, 35:19, 35:23, 36:3, 40:4, 40:5, 41:16, 47:21, 47:25, 48:4, 48:8, 48:23, 49:22, 50:8, 50:22, 53:2, 54:2, 54:4, 54:8, 55:1, 56:9, 56:15
**sentenced** [8] - 14:1, 42:16, 45:16, 47:5, 47:11, 47:13, 47:18, 47:23
**sentences** [4] - 21:6, 21:11, 47:3, 47:7
**sentencing** [33] - 5:14, 5:15, 10:9, 10:16, 11:2, 11:19, 13:8, 13:23, 13:25, 14:3, 15:12, 20:7, 20:9, 22:6, 22:10, 22:13, 25:6, 25:7, 25:20, 26:9, 26:22, 29:16, 32:1, 34:17, 40:3, 41:10, 41:13, 41:23, 44:15, 44:16, 45:8, 47:1, 48:2
**SENTENCING** [1] - 1:9
**separate** [3] - 16:3, 17:13, 45:15
**serious** [1] - 46:6
**seriousness** [7] - 12:25, 21:23, 23:7, 41:11, 41:17, 48:5,

48:7
**serve** [5] - 21:24, 22:2, 33:7, 35:25, 51:18
**serves** [1] - 36:9
**Service** [1] - 56:5
**services** [1] - 3:1
**serving** [2] - 28:6, 36:2
**set** [2] - 14:9, 45:4
**several** [5] - 12:10, 17:2, 26:14, 26:16, 44:20
**severe** [2] - 32:15, 47:12
**sex** [13] - 6:12, 19:1, 26:3, 33:15, 35:12, 37:21, 38:17, 40:9, 46:1, 47:3, 47:4, 47:10, 52:12
**sexual** [16] - 3:11, 3:13, 3:19, 16:15, 16:20, 24:1, 24:2, 24:4, 25:9, 25:14, 25:15, 29:18, 34:14, 45:14, 46:1, 51:20
**sexually** [4] - 24:14, 25:8, 25:19, 26:18
**shall** [1] - 53:22
**sheet** [1] - 35:7
**Shilo** [1] - 2:2
**SHILO** [1] - 1:6
**short** [1] - 17:7
**shorthand** [2] - 1:22, 14:13
**shot** [1] - 25:22
**show** [3] - 11:6, 11:7, 30:1
**shows** [3] - 24:15, 31:6, 32:3
**sic** [1] - 20:19
**side** [1] - 34:12
**sight** [1] - 47:19
**significant** [2] - 46:12, 47:13, 50:4
**similar** [4] - 21:8, 21:9, 33:24, 47:17
**simply** [4] - 14:15, 15:20, 20:7, 31:18
**single** [5] - 23:4, 24:25, 39:5, 45:7, 45:8
**situation** [2] - 41:12, 54:21
**situations** [2] - 19:1, 48:15
**six** [2] - 16:22, 20:2
**slack** [1] - 46:20
**slap** [1] - 33:10
**sliding** [1] - 30:5
**Smith** [1] - 1:15

**so-called** [1] - 20:23
**society** [3] - 26:17, 28:12, 34:23
**sociopathic** [1] - 43:15
**soften** [1] - 46:4
**someday** [1] - 32:8
**someone** [4] - 5:17, 42:15, 47:11, 51:10
**sometimes** [1] - 48:12
**soon** [3] - 33:1, 33:12, 33:13
**sorry** [1] - 3:9
**sort** [1] - 9:23
**sought** [1] - 38:1
**sounds** [2] - 10:20, 35:16
**speaks** [1] - 41:17
**special** [6] - 16:5, 17:3, 19:23, 20:15, 53:15, 53:16
**specializes** [1] - 40:9
**specific** [2] - 8:13, 35:18
**specifically** [4] - 16:11, 18:8, 21:25, 37:6
**spends** [1] - 25:7
**spoken** [2] - 33:15, 48:6
**stand** [4] - 26:10, 31:25, 36:18, 41:3
**standing** [1] - 41:8
**start** [4] - 12:5, 17:1, 42:4, 48:3
**started** [2] - 16:21, 32:16
**starting** [1] - 13:22
**starts** [1] - 15:25
**state** [5] - 3:12, 11:12, 28:5, 28:11, 51:12
**statement** [9] - 15:5, 22:16, 22:19, 24:16, 28:1, 32:7, 34:6, 36:14, 45:13
**statements** [2] - 9:11, 42:8
**states** [1] - 43:18
**STATES** [2] - 1:1, 1:3
**States** [11] - 1:13, 2:2, 2:5, 13:23, 14:10, 44:12, 51:2, 56:5, 57:4, 57:6, 57:11
**statistic** [1] - 21:14
**Steele** [1] - 1:19
**stenographically** [1] - 57:8
**step** [3] - 14:7, 20:22, 48:16
**still** [5] - 7:7, 7:15,

7:23, 31:22, 46:5
**stories** [1] - 43:21
**Street** [1] - 1:24
**strong** [2] - 29:23, 39:22
**strongly** [1] - 40:4
**struck** [1] - 29:5
**studies** [2] - 52:23, 52:25
**study** [3] - 44:8, 52:18
**subject** [1] - 38:9
**subjected** [2] - 23:16, 23:17
**submit** [2] - 26:7, 52:16
**submitted** [3] - 5:22, 29:14, 38:24
**subsequent** [1] - 7:1
**substances** [1] - 2:18
**succumb** [1] - 29:9
**suffering** [1] - 39:24
**sufficient** [3] - 21:16, 28:6, 47:25
**suggests** [1] - 50:20
**Suite** [1] - 1:19
**sum** [2] - 20:15, 53:12, 53:15
**summarize** [1] - 15:5
**summary** [2] - 6:22, 27:11
**sun** [1] - 38:10
**supervised** [2] - 20:12, 53:2
**supervisory** [1] - 16:9
**support** [10] - 5:17, 34:13, 38:6, 38:9, 38:15, 38:21, 38:25, 39:4, 39:18, 39:23
**supported** [1] - 23:24
**supportive** [1] - 43:20
**suppress** [1] - 29:18
**surely** [1] - 51:25
**surrender** [1] - 40:12
**surrendered** [1] - 36:20
**symptom** [1] - 37:20
**system** [2] - 27:19, 35:6

**T**

**table** [1] - 28:1
**taboo** [1] - 38:9
**tailor** [1] - 21:15
**technical** [2] - 6:14, 14:23
**technically** [2] - 53:16, 54:18
**temper** [1] - 49:20
**ten** [1] - 24:23

**term** [10] - 6:21, 14:14, 35:19, 35:23, 47:6, 50:4, 51:3, 52:25, 53:2, 53:23
**terms** [9] - 13:5, 18:12, 23:5, 41:12, 42:11, 45:13, 47:6, 47:7, 47:13
**terrible** [4] - 28:8, 30:23, 32:2, 34:4
**test** [2] - 10:2, 39:22
**testimony** [1] - 43:7
**Texas** [10] - 29:16, 32:17, 33:3, 33:14, 33:25, 35:6, 35:21, 35:24, 36:7, 51:12
**THE** [63] - 1:9, 1:12, 1:17, 2:1, 2:8, 2:9, 2:16, 2:17, 2:21, 2:22, 2:24, 2:25, 3:2, 3:3, 3:4, 3:5, 4:24, 4:25, 5:2, 5:3, 5:5, 5:6, 5:12, 5:24, 6:1, 6:7, 7:11, 7:16, 7:21, 8:2, 8:10, 8:14, 8:20, 9:2, 9:13, 9:16, 10:11, 10:24, 11:25, 18:18, 19:12, 19:14, 20:19, 20:21, 21:24, 28:2, 35:2, 35:5, 35:15, 36:5, 36:12, 36:15, 36:16, 36:17, 40:17, 41:7, 54:6, 54:8, 54:15, 56:2, 56:3, 56:19, 56:21
**themself** [1] - 26:10
**therapy** [1] - 52:19
**thereafter** [1] - 20:13
**therefore** [2] - 48:7, 50:23
**they've** [1] - 26:5
**thinks** [1] - 49:7
**thoroughly** [1] - 28:13
**threats** [1] - 30:11
**three** [2] - 3:9, 18:19
**three-count** [1] - 3:9
**threw** [1] - 7:18
**throat** [1] - 45:20
**throughout** [2] - 2:23, 13:17
**tied** [1] - 45:19
**TIMOTHY** [1] - 1:9
**tips** [1] - 50:19
**Title** [2] - 14:10, 57:6
**today** [11] - 2:10, 2:13, 2:20, 28:1, 32:5, 36:18, 39:16, 42:9, 54:17, 56:9, 56:17
**together** [1] - 31:12
**Tony** [2] - 26:24, 27:2

**top** [1] - 47:22
**tortures** [1] - 30:15
**total** [10] - 12:12, 12:13, 16:21, 17:24, 18:19, 19:6, 19:9, 19:21, 20:2
**totality** [1] - 30:6
**touch** [2] - 31:2, 31:5
**touches** [1] - 31:14
**towards** [3] - 47:22, 48:9, 53:11
**trafficking** [3] - 6:13, 46:1, 47:4
**tragic** [1] - 37:22
**trained** [1] - 43:7
**TRANSCRIPT** [1] - 1:9
**transcript** [2] - 57:7, 57:9
**transfer** [1] - 56:5
**transferring** [1] - 51:11
**transporting** [2] - 3:10, 3:18
**treat** [1] - 30:18
**treated** [1] - 29:3
**treatment** [11] - 26:14, 32:14, 33:15, 35:13, 38:16, 39:22, 40:9, 51:21, 52:1, 52:12, 52:13
**trial** [1] - 27:4
**tried** [2] - 27:2, 44:5
**trigger** [1] - 29:22
**true** [6] - 9:12, 27:2, 40:20, 51:22, 51:23, 57:7
**trust** [1] - 24:7
**truth** [3] - 9:24, 36:25, 37:23
**try** [3] - 49:12, 52:4, 52:21
**trying** [1] - 28:11
**turn** [2] - 6:1, 13:8
**turned** [1] - 25:10
**turns** [1] - 25:11
**two** [14] - 13:22, 15:16, 15:18, 15:19, 16:7, 16:10, 16:16, 16:18, 18:9, 20:6, 24:21, 24:22, 25:9, 27:12
**two-level** [5] - 16:7, 16:10, 16:16, 16:18, 18:9
**type** [1] - 25:14
**types** [3] - 47:17, 47:18, 52:23

## U

**U.S** [2] - 2:6, 32:17
**ultimate** [1] - 50:20
**ultimately** [6] - 7:9, 13:3, 13:18, 21:12, 34:10, 49:24
**unacceptable** [2] - 23:19, 26:19
**under** [7] - 3:13, 10:22, 18:1, 28:7, 38:10, 43:5, 46:10
**underlying** [1] - 54:19
**underprivileged** [1] - 24:10
**unduly** [1] - 16:14
**uneducated** [1] - 24:10
**unique** [2] - 44:3
**uniquely** [1] - 52:17
**unit** [1] - 51:21
**UNITED** [2] - 1:1, 1:3
**United** [11] - 1:13, 2:2, 2:4, 13:23, 14:10, 44:12, 51:2, 56:5, 57:4, 57:6, 57:11
**unless** [1] - 46:16
**unnoticed** [1] - 26:11
**unpaid** [1] - 53:22
**unsuccessful** [1] - 29:20
**unwarranted** [1] - 21:10
**up** [17] - 7:22, 10:19, 15:14, 16:22, 20:11, 20:13, 23:7, 24:5, 25:16, 42:15, 44:13, 44:18, 45:10, 45:19, 48:15, 53:24
**upbringings** [1] - 42:22
**updated** [1] - 39:17
**uploaded** [1] - 55:8
**upper** [3] - 20:4, 48:23, 49:25
**urgency** [1] - 29:19
**urges** [3] - 29:9, 34:20
**utter** [1] - 37:12

## V

**value** [2] - 45:23, 52:17
**vanished** [1] - 36:21
**various** [1] - 3:10
**verse** [1] - 14:12
**versus** [1] - 2:2
**VI** [1] - 20:3
**via** [2] - 1:22, 37:5
**victim** [2] - 9:11, 16:12

**victim's** [2] - 24:16, 24:20
**victimization** [3] - 37:25, 38:20, 39:1
**victimize** [1] - 27:21
**victimized** [1] - 50:15
**victims** [15] - 6:12, 17:6, 17:14, 17:22, 23:6, 24:12, 24:17, 24:21, 25:17, 30:5, 30:14, 31:23, 37:4, 45:11, 45:15
**view** [2] - 48:6, 50:10
**viewed** [3] - 45:7, 46:6, 46:25
**virtue** [1] - 41:20
**voice** [1] - 39:23
**volumes** [1] - 41:17
**voluntarily** [4] - 28:25, 36:20, 44:12, 52:16
**voluntary** [1] - 40:12
**volunteer** [1] - 39:21
**volunteered** [1] - 44:7
**VS** [1] - 1:5

## W

**waive** [1] - 55:14
**waived** [1] - 54:24
**walked** [1] - 29:24
**Wallace** [6] - 30:22, 32:1, 32:3, 43:2, 43:3, 43:6
**Wallace's** [3] - 40:24, 43:9, 44:17
**WATTS** [1] - 1:6
**Watts** [51] - 2:2, 2:5, 2:7, 3:3, 5:9, 5:17, 8:5, 13:2, 13:20, 15:6, 18:19, 20:24, 23:1, 23:3, 26:19, 28:5, 28:8, 28:9, 28:11, 28:22, 29:15, 30:13, 30:20, 31:18, 32:13, 33:2, 34:2, 34:11, 34:15, 34:17, 36:13, 40:18, 41:7, 42:6, 42:13, 43:3, 43:19, 43:22, 43:25, 44:4, 45:24, 49:3, 49:21, 50:9, 50:10, 50:25, 51:17, 53:8, 53:16, 54:16, 56:8
**Watts'** [8] - 10:4, 12:25, 31:24, 43:16, 44:10, 51:16, 51:19, 51:20
**weapons** [1] - 30:10
**week** [1] - 55:10
**weigh** [2] - 13:16, 46:9

**well-thought-out** [1] - 41:1
**Western** [3] - 26:25, 27:1, 57:5
**WESTERN** [1] - 1:1
**whack** [1] - 48:13
**whole** [2] - 14:8, 42:10
**willing** [2] - 38:22, 39:21
**willingness** [2] - 46:19, 52:15
**wish** [3] - 29:16, 29:22, 37:22
**wished** [1] - 29:17
**withdraw** [2] - 8:8
**withdrawing** [1] - 6:20
**withdrawn** [3] - 8:4, 8:18, 9:5
**wonders** [1] - 50:14
**words** [2] - 35:22, 40:10
**world** [2] - 24:10, 34:22
**worse** [3] - 30:20, 45:18, 45:22
**worst** [2] - 37:22, 45:25
**wrist** [1] - 33:10
**write** [1] - 52:6
**writted** [1] - 56:7
**written** [1] - 5:16
**wrongdoing** [1] - 44:8
**wrote** [2] - 29:7, 29:15

## Y

**year** [3] - 3:16, 4:4, 4:11
**years** [20] - 3:14, 16:12, 16:13, 20:13, 25:4, 26:16, 28:4, 32:19, 33:5, 33:11, 34:22, 35:5, 35:17, 40:6, 41:16, 42:23, 47:7, 47:14, 47:21, 51:23
**yesterday** [1] - 6:19
**young** [2] - 49:8, 50:14
**yourself** [2] - 46:21, 52:16